[No. B058602. Second Dist., Div. Two. Oct. 2, 1992.]

SAVE OUR RESIDENTIAL ENVIRONMENT, Plaintiff and Respondent,
v.
CITY OF WEST HOLLYWOOD et al., Defendants and Appellants;
ROSSMOOR ENTERPRISES, INC., Real Party in Interest and Appellant.

COUNSEL

Michael Jenkins, City Attorney, Richards, Watson & Gershon and Gregory M. Kunert for Defendants and Appellants.

Rutan & Tucker, Robert S. Bower and Hans Van Ligten for Real Party in Interest and Appellant.

Reznik & Reznik, Benjamin M. Reznik, John M. Bowman and Fred N. Gaines for Plaintiff and Respondent.

## OPINION

SUZUKAWA, J.*—

### Introduction

This appeal is from a superior court judgment granting a petition for writ of mandate filed by respondent Save Our Residential Environment (SORE), a nonprofit association of property owners and residents, against developer and real party in interest Rossmoor Enterprises, Inc. (Rossmoor) and appellants (respondents below) City of West Hollywood and the City Council of the City of West Hollywood (the City), halting construction of a senior citizen housing development.

### Facts

Rossmoor requested permits to construct a six-story residential care facility for senior citizens in the City, which would implement the provisions of the City's general plan and zoning ordinance calling for housing designed to meet the special needs of the elderly. After preparation and review of an environmental impact report (EIR), the receipt of comments and the holding of several public hearings (the results of which were incorporated into a revised EIR), the City approved Rossmoor's construction of a scaled-down, five-story facility (the Project). SORE filed a petition for writ of mandate, claiming that the City's decision was inconsistent with the zoning ordinance and General Plan and challenging the adequacy of the EIR. The trial court ordered further briefing on whether the EIR for the Project was required to examine alternative sites outside the territorial limits of the City, since the EIR found no feasible alternative sites within the City.

Thereafter, on December 12, 1990, the court granted the petition for writ of mandate, ruling that the EIR failed to discuss alternative sites outside the territorial limits of the City. The court also awarded SORE attorney fees,

---

*Judge of the Municipal Court for the Compton Judicial District sitting under assignment by the Chairperson of the Judicial Council.

pursuant to Code of Civil Procedure section 1021.5, in an amount to be determined at a later time.

On December 31, 1990, the Supreme Court decided *Citizens of Goleta Valley* v. *Board of Supervisors of Santa Barbara County* (1990) 52 Cal.3d 553 [276 Cal.Rptr. 410, 801 P.2d 1161] (*Goleta II*). Among other things, the *Goleta II* decision clarified the requirement that an EIR consider alternative project sites and suggested that a local agency need not consider siting a project outside its territorial jurisdiction as part of the EIR process. The City and Rossmoor filed motions for reconsideration of the trial court's decision, and a hearing was held on February 8, 1991. Following the hearing, the trial court modified its ruling by eliminating its previous requirement that the City examine sites outside its jurisdiction. However, the court held that the City could not approve the Project without considering alternative sites within the City, notwithstanding the City's finding that there were no feasible alternative sites within the City. SORE sought, and the City opposed, the award of attorney fees pursuant to Code of Civil Procedure section 1021.5. The court ultimately awarded SORE $75,050 in attorney fees.

Multiple notices of appeal were filed. All appeals have been consolidated for purposes of briefing and argument.

During the pendency of this appeal, the City proceeded with the preparation of a supplemental EIR in order to remedy the defects identified by the court. Thereafter, the City filed with the trial court its return to the peremptory writ of mandate and exhibits in support thereof, stating that it had complied with the writ's directive. Based upon the supplemental EIR, the City again approved the Project and SORE again sought a writ challenging that approval. The trial court in that second writ proceeding found in favor of the City and Rossmoor. SORE's appeal of that decision, with which we are not here directly concerned, was filed on July 10, 1992.

*Discussion*

I

■ The City contends that this court has no jurisdiction to hear this appeal because SORE lacked standing to prosecute this action by failing to meet certain requirements of the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000 et seq.) This argument is based on the fact that (1) SORE did not submit its objections to the Project during the hearing process as required by Public Resources Code section 21177 nor did

it establish its exemption from that requirement pursuant to subdivision (c) of section 21177, and (2) SORE did not specifically object to the legal adequacy of the EIR's alternative site analysis, each of which alone precludes SORE from maintaining this action for failure to exhaust its administrative remedies. We are not persuaded by these arguments.

First, while it may be true that SORE did not offer formal proof in the writ proceeding that it was created subsequent to the City's approval of the Project thus meeting the exemption of Public Resources Code section 21177, subdivision (c), the City does not challenge the truth of this assertion. The purposes of CEQA, including the provisions regarding the exhaustion of administrative remedies, are not served by requiring proof in the record of compliance with the requirement that a person objecting to the Project present his or her comments, orally or in writing, at the appropriate stage of the proceedings when there is no real dispute that the requirement was in fact met. The City's argument thus fails.

Moreover, we find that SORE's objections to the Project, while not identifying the precise legal inadequacy upon which the trial court's ruling ultimately rested, fairly apprised the City and Rossmoor that SORE believed the environmental impacts of developing the Project on the Rossmoor site would be deleterious to the surrounding community. Thus, we conclude that the substance of the issue of alternative sites was raised, satisfying the requirements of CEQA. (*Citizens' Association for Sensible Development* v. *County of Inyo* (1985) 172 Cal.App.3d 151, 163 [217 Cal.Rptr. 893].)

## II

■ The second issue which we must address before turning to the merits of this action is whether the adequacy of the Rossmoor EIR is moot as a result of the City's actual compliance with the writ, or, alternatively, whether the City has waived its right to appeal the trial court's decision by complying with the writ.

SORE contends that this case is moot because "no substantial rights can be affected by the decision either way," quoting *Keefer* v. *Keefer* (1939) 31 Cal.App.2d 335, 337 [87 P.2d 856]. And indeed, in the usual case, where the respondent voluntarily complies with the writ, the proceeding would be moot. (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 671 [56 Cal.Rptr. 265, 423 P.2d 193]; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 73, p. 712.) Even if this appeal were otherwise moot as a result of the City's actual compliance with the writ's mandate, the trial court's award of attorney fees to SORE pursuant to Code of Civil Procedure section 1021.5 would

preclude us from dismissing the appeal. Because the award of attorney fees depends on the propriety of the trial court's ruling on the merits of the action, the appeal is not moot. (*Rees* v. *Gardner* (1960) 185 Cal.App.2d 630, 633 [8 Cal.Rptr. 505]; see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeals, § 525, pp. 507-509 and cases cited therein.)

Finally, even if the City has waived its right to appeal the issuance of the writ by complying with its directives, the City is powerless to waive Rossmoor's right to appeal. (*Bowman* v. *City of Petaluma* (1986) 185 Cal.App.3d 1065, 1085 [230 Cal.Rptr. 413].) We now turn to the merits of this action.

### III

In reviewing the trial court's ruling that the Rossmoor EIR was legally inadequate, we employ the same standard that applied below: Did the City proceed in the manner required by law and is there substantial evidence to support the City's decision? (Pub. Resources Code, § 21168.5; *Goleta II*, *supra*, 52 Cal.3d 553, 564.)

Pursuant to CEQA and section 15126, subdivision (d) of the guidelines issued thereunder (Cal. Code Regs., tit. 14, § 15000 et seq.; the Guidelines), an EIR must describe "a range of reasonable alternatives to the project, or to the location of the project, which could feasibly obtain the basic objectives of the project. . . ." ■ Whether an EIR must consider the availability of alternative sites to a given project depends upon the particular facts of the case (*Citizens of Goleta Valley* v. *Board of Supervisors* (1988) 197 Cal.App.3d 1167, 1179 [243 Cal.Rptr. 339]) (*Goleta I*). The extent to which project alternatives must be considered is governed by a rule of reason, the ultimate objective being whether a discussion of alternatives "fosters informed decision-making and informed public participation." (Guidelines, § 15126, subd. (d)(5).) CEQA does not require technical perfection on the part of the EIR; rather, an EIR which is adequate, complete and a good faith effort at full disclosure will meet the mandate of CEQA. (*Goleta I*, *supra*, 197 Cal.App.3d 1167, 1176-1177; Guidelines, § 15151.)

As stated in *Residents Ad Hoc Stadium Committee* v. *Board of Trustees* (1979) 89 Cal.App.3d 274, 286-287 [152 Cal.Rptr. 585]:

"The discussion of alternatives need not be exhaustive, and the requirement as to the discussion of alternatives is subject to a construction of reasonableness. The statute does not demand what is not realistically possible given the limitation of time, energy, and funds . . . . [¶] Absolute

perfection is not required; what is required is the production of information sufficient to permit a reasonable choice of alternatives so far as environmental aspects are concerned. It is only required that the officials and agencies make an objective, good-faith effort to comply. That requires a 'hard look' at environmental consequences in recognition of the factors described in [CEQA]; the court does not seek to impose unreasonable extremes or to interject itself within the area of discretion as to the choice of the action to be taken."

The Rossmoor EIR contained the following discussion of alternative sites:

"The alternative site alternative, while discussed with City staff, did not appear to be a viable alternative for inclusion in the EIR simply due to the scarcity of vacant, similarly-sized, residentially-zoned and privately-owned parcels within reasonable proximity of the project site. In fact, City staff could not identify a single site where a project of this type and size could be constructed without demolishing a significant number of existing housing units. The City's General Plan discourages the demolition of existing housing units in order to maintain its stock of affordable housing. Also, the City's General Plan and zoning ordinance do not provide for the approval of congregate care facilities in either commercial or industrial zones within the City. Because of these and other related factors, an alternative site was not chosen for discussion in the EIR." ■ The question before us is whether, applying the rule of reason, the foregoing discussion of alternative sites meets the requirements of CEQA. We find that it does.

Here, the City's general plan calls for the provision of housing specifically designed to meet the needs of its sizable senior citizen population, which in turn necessarily requires a substantial parcel of property within close proximity to public transportation, facilities and markets. While the City is a fully developed urban center, it is but two square miles in area. The EIR states that no other vacant parcels of comparable size are available for development of a project of this type, whether or not owned by Rossmoor. We find that in this particular factual situation, it is unreasonable to require the EIR to discuss alternative project sites.

Both *Goleta I* and *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376 [253 Cal.Rptr. 426, 764 P.2d 278], upon which SORE relies, are distinguishable from the case before us. In *Goleta I,* the Court of Appeal concluded that an EIR's failure to address alternative sites fell short of the full disclosure required by CEQA to ensure informed public participation and informed decisionmaking. In that case, the

State Coastal Commission recommended that a parcel of beachfront property in Santa Barbara County known as Haskell Beach be designated for new visitor-serving facilities, notwithstanding the county's wish to designate the land as an urban area suitable for planned residential development. The Hyatt Corporation, which owned the property, sought to construct a 574-unit resort facility. The Hyatt EIR discussed project alternatives (no project; clustered high-density residential development; a 340-unit resort hotel; and the alternative ultimately approved, a 400-unit hotel), but did not discuss alternative sites for the project " 'because the project sponsor has no holdings of similarly situated property susceptible to development.' " (*Goleta I, supra*, 197 Cal.App.3d 1167, 1177, fn. 1.) Hyatt also argued that the development of the project would not foreclose the development of a hotel at feasible sites in the vicinity by other developers. The court found these two contentions unpersuasive. While the planning authorities had indicated that construction of a beachfront resort in the Santa Barbara area would be beneficial, the Hyatt EIR failed to consider the environmental impact of proceeding with the Haskell Beach location as opposed to other potential project sites which would also meet the objective of providing visitor-serving facilities with access to the beach. This omission was unreasonable, and the EIR was therefore inadequate. (*Id.* at pp. 1180-1181.)

Here, however, in order to meet the objectives of the General Plan, the project was required to be located within a very limited geographical area, which was already fully developed. There is no requirement that *infeasible* alternative sites be discussed in the EIR (*Goleta II, supra*, 52 Cal.3d 553; Guidelines, § 15126, subd. (d)), yet this is in effect what the trial court ordered.[1]

Likewise, in *Laurel Heights Improvements Assn.* v. *Regents of University of California, supra*, (1988) 47 Cal.3d 376, the Supreme Court ruled that the EIR prepared by the Regents of the University of California, San Francisco in connection with its proposal to move the school of pharmacy biomedical research facilities from the Parnassus campus in San Francisco to a high-density residential neighborhood known as Laurel Heights was deficient

---

[1]SORE contends that the fact that the supplemental EIR prepared to comply with the trial court's writ identified and discussed two alternative sites within the City's jurisdiction establishes the deficiency of the original EIR. This argument is wholly unpersuasive. The fact the City undertook the futile act which the trial court required of it is not surprising, as it was understandably anxious to proceed with the project. More importantly, there is no evidence that Rossmoor had any ability to acquire either of these sites (both of which consisted of multiple lots owned by multiple third parties). These sites were in fact not feasible, and thus not appropriate for inclusion in the EIR, because their availability for development was entirely speculative.

because it failed to consider project alternatives. The EIR disclosed that the research units to be relocated included facilities that handled possibly toxic chemicals, possible carcinogens and radioactive substances, and produced hazardous wastes. The EIR identified three project alternatives: (1) no project; (2) alternative sites on the UCSF Parnassus campus; and (3) off-campus sites. With respect to the second alternative, the EIR stated simply that "no alternative sites on [the Parnassus] campus were evaluated as possible candidates for the location of the basic science units of the School of Pharmacy." (*Id.* at p. 403.) As to off-campus sites, the EIR read in its entirety: "Currently, the University has facilities at numerous other locations in the City of San Francisco, as shown in Exhibit V-1 [a map]. None of these sites had space available of sufficient size to accommodate the School of Pharmacy units that are to be moved." (*Ibid.*) The Supreme Court concluded that the foregoing statements in the EIR amounted to no discussion at all of project alternatives. (*Ibid.*)

Unlike the EIR in *Laurel Heights*, the Rossmoor EIR stated its reasons for concluding that no alternative sites to the project were feasible. While some conclusions may require an extended analysis to justify them, others are so simple they are almost self-explanatory. In the present case, we are dealing with the latter. There is no other space available unless the City demolishes existing residential units. This is a statement of fact. Although we recognize the burden is not on SORE to identify alternatives if this factual conclusion were unfounded, surely SORE would have identified the alternative sites meriting analysis. Its failure to do so points up the futility of requiring alternative site analysis in this case.

■  We are mindful that "the purpose of CEQA is not to generate paper, but to compel government at all levels to make decisions with environmental consequences in mind." (*Laurel Heights, supra,* 47 Cal.3d 376, 393.) The City satisfied this objective.

IV

Because SORE did not prevail in this action, it is not entitled to the award of attorney fees under Code of Civil Procedure section 1021.5. (*Bowman* v. *City of Petaluma, supra,* 185 Cal.App.3d 1065, 1085.)

The judgment is therefore reversed, with the parties to bear their own costs on appeal.

Gates, Acting P. J., and Nott, J., concurred.

A petition for a rehearing was denied October 29, 1992, and respondent's petition for review by the Supreme Court was denied December 30, 1992.