[No. B081999. Second Dist., Div. Six. July 19, 1995.]

JOHN S. GARRISON, Plaintiff and Appellant, v.
BOARD OF DIRECTORS OF THE UNITED WATER CONSERVATION
DISTRICT, Defendant and Respondent.

■■■■■■■■■■■

**COUNSEL**

Francis & Reed and Richard L. Francis for Plaintiff and Appellant.

Drescher, McConica, Onstot, Schuck & Young and Philip C. Drescher for Defendant and Respondent.

**OPINION**

**STONE (S. J.), P. J.**—John S. Garrison (Garrison) appeals the trial court's dismissal of his suit against respondent/defendant Board of Directors of the United Water Conservation District (United), following the court's sustaining of United's demurrer to Garrison's first amended petition for writ of mandate without leave to amend.

We reverse the judgment of dismissal.

*Background*

United held public hearings in May and June 1993 on the question of compliance with the California Environmental Quality Act (CEQA—Pub. Resources Code, § 21000 et seq.)[1] for its proposed project of using seven gravel pits, located near the Santa Clara River, as percolation basins and eventually as water reservoirs. This project, entitled the Fox Canyon Seawater Intrusion Abatement Project (Fox Canyon Project or Project), included a "pilot project" involving the conversion of one gravel pit, called the Noble Pit. Prior to the aforementioned hearings, United commissioned an environmental study of the Noble Pit pilot project, and concluded pursuant to this study that there was no substantial evidence the pilot project would have a significant impact on the environment.

Garrison attended the public hearings with his present counsel, Richard L. Francis (Francis). Garrison said nothing at the hearings; however, as an individual Francis objected to United's failure to obtain an environmental

---

[1]All further statutory references are to this code unless otherwise stated.

impact report (EIR). Francis argued the Fox Canyon Project involved multiple gravel pits, which could not be segmented one basin at a time for CEQA analysis, and therefore adopting a negative declaration regarding the subject basin would not address the future cumulative environmental impacts of the Project. Francis also argued United failed to assert on what basis it considered itself the lead agency for the Project.

Despite Francis's objections, United approved the pilot project and adopted a negative declaration on June 9, 1993.

On behalf of himself and the general public, Garrison filed a petition for writ of mandate on July 8, 1993, seeking an order and injunction that United vacate its approval of the pilot project and its adoption of the negative declaration. The petition contained substantially the same grounds Francis had asserted at the aforementioned public hearings.

United demurred to Garrison's petition on the ground he had not alleged facts showing exhaustion of his administrative remedies. United claimed that, although Garrison attended the public hearings on the pilot project, he was not on the record as having made a single comment. CEQA requires a petitioner in superior court to have commented at the public hearing. (See our discussion, *infra.*) United contended Garrison was personally obligated to speak in order to exhaust his administrative remedies.

The trial court sustained United's demurrer and granted Garrison leave to amend. Garrison filed his first amended petition for mandamus on November 2, 1993. The only substantial change from the original petition was the allegation of Garrison's capacity: "Petitioner, JOHN S. GARRISON, brings this lawsuit as a duly authorized individual member of and in a representative capacity on behalf of, THE COALITION FOR AQUIFER HONESTY, an unincorporated association composed of, among others, Richard L. Francis and John S. Garrison, and formed on or about July 8, 1993."

United again demurred, contending Garrison and the Coalition for Aguifer Honesty (Coalition) did not exhaust their administrative remedies since the Coalition was wrongfully created as a device to sidestep the exhaustion requirement. It further contended the suit was barred by the statute of limitations since the Coalition became plaintiff after the limitations period provided by section 21167 had expired. United argued the relation-back theory for amended pleadings did not apply as the Coalition was asserting an independent right as a separate legal entity.

The trial court sustained this demurrer without leave to amend.

*Standing*

 United contends Garrison has no standing to bring this appeal. We disagree.

Appeals may be brought only by aggrieved parties. (Code Civ. Proc., § 902.) An aggrieved party must (1) be a party of record (2) whose rights or interests are directly and injuriously affected by the judgment. (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 736-737 [97 Cal.Rptr. 385, 488 P.2d 953].)

 Garrison is aggrieved under this definition. Although he was dismissed as an individual party from the original petition for mandamus for his failure to exhaust his personal administrative remedies, nevertheless, he maintained his status as a party of record by filing the amended petition in his name in his representative capacity.

Garrison also fulfills the second requirement as a party directly and injuriously affected by the judgment dismissing the amended petition. Whether suing as an individual or in his representative capacity, Garrison had the same direct interest in the subject matter of this suit, and therefore suffered the same injury from the dismissal of the suit. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 139, p. 148; *Estate of Colton* (1912) 164 Cal. 1, 4-5 [127 P. 643].)

*Administrative Remedies*

Section 21177, subdivision (b), provides: "No person shall maintain an action or proceeding unless that person objected to the approval of the project orally or in writing during the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination." Subdivision (b) requires parties to exhaust their administrative remedies before bringing legal challenges under CEQA. (*Corona-Norco Unified School Dist.* v. *City of Corona* (1993) 17 Cal.App.4th 985, 997 [21 Cal.Rptr.2d 803].) The statute's purpose is to inform the decisionmaking body of the contentions of the interested parties before litigation is instituted, so that it has the opportunity to address the contentions and hopefully render litigation unnecessary. (*Ibid.*)

The exemption from section 21177, subdivision (b) is subdivision (c). (*Save Our Residential Environment* v. *City of West Hollywood* (1992) 9 Cal.App.4th 1745, 1749-1750 [12 Cal.Rptr.2d 308].) Subdivision (c) states: "This section does not preclude any organization formed after the approval

of a project from maintaining an action pursuant to Section 21167 if a member of that organization has complied with subdivision (b)." This exemption signifies that "[t]he purposes of CEQA . . . are not served by requiring proof in the record of compliance with the requirement [under subdivision (b)] that a person objecting to the Project present his or her comments, orally or in writing, at the appropriate stage of the proceedings *when there is no real dispute that the requirement was in fact met.*" (9 Cal.App.4th at p. 1750, italics added.)

■ The exemption provided for in section 21177, subdivision (c) applies here. It expressly allowed formation of the Coalition after United's approval of the negative declaration since a member of the Coalition, Francis, complied with subdivision (b) by objecting to the issuance of a negative declaration. His ground for the objection, that an EIR was required under CEQA, formed the substantive basis of Garrison's amended petition for mandamus. Since United was given the opportunity to consider the need for an EIR prior to the institution of this suit, the requirements for exhaustion of administrative remedies were met here. There is no evidence the amended petition is a sham. ■ Section 21177, subdivision (c), places no limitations on the formation of organizations for CEQA litigation other than requiring that one member of an organization comply with subdivision (b) of the statute.

*Statute of Limitations*

Section 21167 provided prior to the judgment in this case: "Any action or proceeding to attack, review, set aside, void, or annul the following acts or decisions of a public agency on the grounds of noncompliance with this division shall be commenced as follows: . . . . [¶] (b) Any action or proceeding alleging that a public agency has improperly determined whether a project may have a significant effect on the environment shall be commenced within 30 days after the filing of the notice . . . ." Subdivision (b) is the applicable statute of limitations.

United's negative declaration was filed June 10, 1993. Garrison's original petition for mandamus was filed within the allowable 30-day period on July 8, 1993. The first amended petition was filed after this period expired, in November 1993.

A court may, in the furtherance of justice allow a party to amend any pleading by adding the name of any party. (Code Civ. Proc., § 473.) ■ California courts have shown a liberal attitude toward allowing amendment of pleadings to avoid the harsh results imposed by statutes of limitations. (*Klopstock* v. *Superior Court* (1941) 17 Cal.2d 13, 19 [108 P.2d 906,

135 A.L.R. 318].) Thus, proper amendments to an original complaint "relate back" to the date of the filing of the original complaint, despite the amendments being made after the statute of limitations has expired. (*Olsen* v. *Lockheed Aircraft Corp.* (1965) 237 Cal.App.2d 737, 742 [47 Cal.Rptr. 242].) The policy behind statutes of limitations is to put defendants on notice of the need to defend against a claim in time to prepare a fair defense on the merits. This policy is satisfied when recovery under an amended complaint is sought on the same basic set of facts as the original pleading. (*Pasadena Hospital Assn., Ltd.* v. *Superior Court* (1988) 204 Cal.App.3d 1031, 1035-1036 [251 Cal.Rptr. 686].)

 The relation-back doctrine applies here. Garrison's first amended petition contains the same basic set of facts as his original petition. The notice policy was therefore satisfied since United received notice of the nature of the action within the 30-day limitations period. The change effected by the amendment is one of form, not of substance, and should be allowed in the interests of justice. (See *Pasadena Hospital Assn., Ltd.* v. *Superior Court, supra,* 204 Cal.App.3d at p. 1037.)

The trial court reasoned the relation-back doctrine did not apply because the Coalition was an entirely separate legal entity with separate legal rights. This reasoning is erroneous. "A suit is sometimes brought by a plaintiff without the right or authority to sue, and the amendment seeks to substitute the real party in interest. Although the original complaint does not state a cause of action *in the plaintiff,* the amended complaint by the right party restates the identical cause of action, and amendment is freely allowed." (5 Witkin, Cal. Procedure, *supra,* Pleading, § 1150, pp. 567-568.)

 United's reliance on *Bartalo* v. *Superior Court* (1975) 51 Cal.App.3d 526 [124 Cal.Rptr. 370], is misplaced. The original plaintiff was injured by defendant's negligence, and filed suit. Thereafter, the law first recognized a spouse's cause of action for loss of consortium. The plaintiff and her husband sought to amend her complaint to add husband as an additional plaintiff on a new cause of action for loss of consortium. Husband's cause was held barred by the statute of limitations. His addition as a plaintiff did not involve a mere technical defect in plaintiff's status, since he was a new party pleading new allegations. Here, in contrast, no new or different obligation by United was alleged in the amended petition. The amended petition merely "substituted" one plaintiff for another on the same cause of action. (5 Witkin, Cal. Procedure, *supra,* Pleading, § 1151, p. 569.)

The judgment dismissing this suit is reversed. The case is remanded to the superior court for further proceedings.

.

Each party will pay its own costs on appeal.

Gilbert, J., concurred.

**YEGAN, J.**—I respectfully dissent. The language and effect of the majority opinion defeat the carefully thought-out goal of a short statute of limitations. The Legislature has told groups how to file a California Environmental Quality Act (CEQA) challenge and what they must do to have standing. If the majority is correct, the liberal policy for amendment of pleadings may be used to defeat that legislative goal.

In sustaining the first demurrer, the trial court ruled that Garrison had no standing to bring a mandamus petition on behalf of himself or the general public. Garrison thereafter filed a first amended petition alleging that he was suing as a member of the Coalition for Acquifer Honesty (Coalition). Respondent again demurred and the trial court sustained the demurrer without leave to amend.

Garrison and the Coalition filed separate appeals. The Coalition abandoned the appeal and we dismissed it.

The judgment is now final as to the Coalition. That leaves Garrison. The majority say that Garrison is an "aggrieved party" and can appeal on behalf of the Coalition. This may be true in layman's terms but not under the law. (Code Civ. Proc., § 902.) "An appellant must show prejudicial error affecting his or her interest in order to prevail on appeal. [Citation.] An appellant cannot urge error which affect only another party who does not appeal. [Citations.]" (*In re Vanessa Z.* (1994) 23 Cal.App.4th 258, 261 [28 Cal.Rptr.2d 313]; see also *Rebney* v. *Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1128 [269 Cal.Rptr. 844].)

The majority hold that Garrison may reinstate the lawsuit even though he lacks standing to sue as an individual. Not so. The action is time barred. Public Resources Code section 21177, subdivision (b) contains a short 30-day statute of limitations, and for good reason. Time marches on and so do projects that may or may not affect the environment.

Although the project has been completed, the majority have revived the CEQA action. This is not what the Legislature had in mind. In the event the negative declaration is overturned by the superior court, how does one "save the environment" from a project that has already been built?

The decision to allow an amendment of the pleadings rests in the sound discretion of the trial court. Without expressly stating so, the majority hold

that the trial court abused its discretion as a matter of law. The majority rely on the relation-back doctrine, which traditionally has been utilized by plaintiffs to substitute a newly discovered defendant as a fictitious "Doe" defendant. (Code Civ. Proc., § 474; *Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596, 602-603 [15 Cal.Rptr. 817, 364 P.2d 681].) The majority also cite Witkin, who has collected the cases that have allowed amendments changing a plaintiff. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1150, pp. 567-568.) However, none of those cases hold that a new plaintiff can be added after the statute of limitations has run.

The majority in one stroke have changed the law as to who is an "aggrieved party," expanded the relation-back doctrine to give plaintiffs with no standing the right to sue, and have undercut the letter and spirit of the 30-day statute of limitations for CEQA actions. The trial court had it right the first time. Garrison may not use the Coalition as his alter ego to revive the action. I would affirm.

A petition for a rehearing was denied August 16, 1995.