[No. B117044. Second Dist., Div. Two. Nov. 12, 1998.]

TINA CLOUD, Plaintiff and Appellant, v.
NORTHROP GRUMMAN CORP., et al., Defendants and Respondents.

**COUNSEL**

Barbara Metzger Kay and Judith K. Williams for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Charles F. Barker and Tracey A. Kennedy for Defendants and Respondents.

**OPINION**

**ZEBROWSKI, J.**—Plaintiff and appellant Tina Cloud is a former employee of Northrop Grumman Corp. Northrop and plaintiff's former supervisor at Northrop are the defendants and respondents (collectively Northrop). In November of 1995, Northrop terminated plaintiff's employment. In June of 1996, plaintiff filed for chapter 7 (liquidation) bankruptcy protection. (11 U.S.C. § 701 et seq.) In the schedule of assets she filed with the bankruptcy court, plaintiff did not disclose any claim or potential claim against Northrop.

Several months later, while her bankruptcy action was pending, plaintiff filed a complaint against Northrop with the Department of Fair Employment and Housing. In November of 1996, she received a letter from the department notifying her of her right to file a lawsuit within one year. In December of 1996 (shortly after she received a bankruptcy discharge, but while her

bankruptcy action remained pending), plaintiff filed the instant wrongful termination and sexual harassment action. Several months after her lawsuit was filed, plaintiff's bankruptcy case was closed, while her lawsuit continued.

After these events, Northrop moved for judgment on the pleadings. Northrop requested that the court take judicial notice of plaintiff's bankruptcy filings, which revealed that plaintiff had not scheduled her claims against Northrop as assets of her bankruptcy estate. Northrop's motion was based on two grounds. First, Northrop contended that plaintiff lacked standing to pursue her civil action because, according to bankruptcy law, plaintiff's claim against Northrop was the property of the bankruptcy estate and the bankruptcy trustee was therefore the real party in interest. Second, Northrop contended that plaintiff was "judicially estopped" from pursuing this lawsuit because of her prior failure to schedule the lawsuit as an asset of the bankruptcy estate.

■ A motion for judgment on the pleadings performs the same function as a general demurrer, and hence attacks only defects disclosed on the face of the pleadings or by matters that can be judicially noticed. (See, e.g., Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1998) ¶¶ 7:275, 7:322, pp. 7-78, 7-84; *Lance Camper Manufacturing Corp.* v. *Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 198 [51 Cal.Rptr.2d 622].) Presentation of extrinsic evidence is therefore not proper on a motion for judgment on the pleadings. (*Ibid.*) Nevertheless, plaintiff opposed Northrop's motion in part by filing her own declaration. Although not technically proper, the evidence plaintiff presented illustrates important reasons for our ultimate disposition.

Plaintiff's declaration alleged that she suffered emotionally and financially as a result of the wrongful actions of Northrop, and that several months after her termination, she consulted a bankruptcy attorney in order to avoid losing her house. Plaintiff alleged that when she filled out bankruptcy documents as instructed by her bankruptcy attorney, she did not know that valid grounds existed for a lawsuit against Northrop, and hence did not list such a claim. Although she had previously consulted a different (nonbankruptcy) lawyer for advice on whether she had grounds for a claim against Northrop, plaintiff alleged that she was too distraught at that initial meeting to detail the course of events coherently. The nonbankruptcy lawyer consequently advised her that any advice as to whether she had a claim would have to await presentation of the facts in a more meaningful way. This allegedly did not occur until after the filing of the bankruptcy petition. Plaintiff allegedly did not know that the bankruptcy and her wrongful

termination, sexual harassment, etc., claims were legally related and, although she testified truthfully to detailed and specific questions from the bankruptcy trustee, he did not ask any questions about such a claim.

After Northrop's motion for judgment on the pleadings was filed, plaintiff allegedly consulted her bankruptcy attorney again, who advised that he could file amendments to her bankruptcy filings to schedule her claim against Northrop. The bankruptcy attorney requested $400 to perform this service, and plaintiff's declaration alleged that she was in the process of making arrangements to obtain these funds. Plaintiff further alleged that she never attempted to hide the existence of the lawsuit from her bankruptcy attorney, nor the existence of the bankruptcy from the nonbankruptcy attorney. Plaintiff alleged that she testified truthfully about her bankruptcy when asked about it by Northrop's attorneys. She further alleged that it was the actions of Northrop, including an alleged "initial denial" of unemployment benefits, which necessitated her bankruptcy filing in the first instance. She concluded that she would be "greatly harmed, emotionally and financially, if [she was] unable to proceed with [her] lawsuit against" Northrop.

The trial court's minute order does not state whether the trial court did or did not consider plaintiff's declaration, but it appears that the trial court did not, since the trial court treated the motion as one for judgment on the pleadings and made no mention of the evidence contained in plaintiff's declaration. The trial court granted the motion without leave to amend on the grounds (1) that plaintiff lacked standing, and (2) that plaintiff was judicially estopped from pursuing her claim. Judgment was entered in favor of Northrop.

We reverse for two reasons. First, as to the standing issue: leave to amend should have been granted either to substitute in the real party in interest (the bankruptcy trustee) or to obtain the trustee's abandonment of the claim. (See, e.g., *Klopstock* v. *Superior Court* (1941) 17 Cal.2d 13, 19-22 [108 P.2d 906, 135 A.L.R. 318].) Second, as to the judicial estoppel issue: a defense of judicial estoppel raises factual issues. (See, e.g., *Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co.* (3d Cir. 1996) 81 F.3d 355.) These factual issues could not be decided solely by reviewing plaintiff's complaint and matters that could be judicially noticed, and hence could not be decided on a motion for judgment on the pleadings. Thus although plaintiff's declaration asserting extrinsic facts was not a proper opposition to a motion for judgment on the pleadings, the facts she alleged highlight the factual nature of the inquiry necessary to determine whether to invoke the doctrine of judicial estoppel.

We will remand with instructions to (1) grant plaintiff leave to amend to substitute in the bankruptcy trustee as the real party in interest or, in the

alternative, obtain the trustee's abandonment of her claims, and (2) if again raised, to determine the judicial estoppel issue on the facts, either by way of summary judgment motion or trial by the court.

## I. STANDING.

### a. *Plaintiff lacked standing to sue Northrop.*

■ The widely accepted rule is that after a person files for bankruptcy protection, any causes of action previously possessed by that person become the property of the bankrupt estate. (See 11 U.S.C. §§ 541(a)(1) and 323; see also, e.g., *United States* v. *Whiting Pools, Inc.* (1983) 462 U.S. 198, 203-205, fn. 9 [103 S.Ct. 2309, 2312-2313, 76 L.Ed.2d 515] ["a broad range of property," including causes of action, is included in the bankruptcy estate]; *Jones* v. *Harrell* (11th Cir. 1988) 858 F.2d 667, 669 ["A trustee in bankruptcy succeeds to all causes of action held by the debtor at the time the bankruptcy petition is filed," the debtor lacks standing to settle a personal injury claim]; *Harris* v. *St. Louis University* (Bankr.E.D.Mo. 1990) 114 B.R. 647, 648 [debtor's cause of action for age and sex discrimination in employment became property of bankruptcy estate upon filing of chapter 7 proceeding]; *Cain* v. *Hyatt* (Bankr.E.D.Pa. 1989) 101 B.R. 440, 442 [debtor's cause of action for illegal termination in violation of human rights law became property of bankruptcy estate upon filing of chapter 7 proceeding].) Complete unanimity has not been reached on this point, however. Some federal circuits make distinctions among different types of claims, holding some to become property of the bankrupt estate and some not, depending upon their treatment under local state law. As the court noted in *In re Lansberry* (Bankr.W.D.Pa. 1995) 177 B.R. 49, 54 "[t]here is a split among courts of appeals on the method for determining whether a particular pre-petition cause of action becomes property of the estate. [¶] The majority have held that all pre-petition causes of action become estate property without regard to state law. *See Matter of Geise*, 992 F.2d 651, 655 (7th Cir. 1993); *Cottrell* v. *Schilling*, 876 F.2d 540, 542-43 (6th Cir. 1989); *Sierra Switchboard Co.* v. *Westinghouse Electric Co.*, 789 F.2d 705, 709 (9th Cir. 1986); *Tignor* v. *Parkinson*, 729 F.2d 977, 980 (4th Cir. 1984). [¶] The United States Court of Appeals for the Second Circuit has rejected the *per se* rule adopted by the majority and has held that state law must be consulted. In particular, one must determine whether a given cause of action is transferable under state law or is subject to reach of creditors by judicial process." As the *Lansberry* court noted by its citation of the Ninth Circuit case of *Sierra Switchboard Co.* v. *Westinghouse Elec. Corp.* (9th Cir. 1986) 789 F.2d 705, the Ninth Circuit follows the "per se" rule, by which all causes of action generally become the property of the bankruptcy estate. Since the bankruptcy proceeding involved

here was pending in the Ninth Circuit, we look specifically to Ninth Circuit law to determine whether plaintiff's claims became assets of the bankruptcy estate.

In *Sierra Switchboard*, the Ninth Circuit confronted "an issue of first impression" in the Ninth Circuit: "whether the Bankruptcy Reform Act of 1978 broadened the definition of 'property' to include a cause of action for emotional distress where such a cause of action could not be reached by creditors under state law." (*Sierra Switchboard Co. v. Westinghouse Elec. Corp., supra,* 789 F.2d 705, 707-708.) The Ninth Circuit found that even "exempt property is initially included in the bankruptcy estate under Section 541," and that "[b]y adopting a comprehensive definition of property, the Bankruptcy Reform Act reduced the bankruptcy court's cumbersome reliance on state law analysis for determining property to be included in the estate." The Ninth Circuit thus concluded that "regardless of whether a personal injury claim is transferable or assignable under state law, such claims become part of the bankruptcy estate under section 541." (*Id.* at pp. 708-709.)[1] (See also *In re Creviar* (9th Cir. 1987) 820 F.2d 1553, 1556 [citing *Sierra Switchboard* with approval]; *In re Transcon Lines* (9th Cir. 1995) 58 F.3d 1432, 1438 [citing *Sierra Switchboard* with approval].) Thus the court in *In re Bronner* (Bankr. 9th Cir. 1992) 135 B.R. 645, 647 stated: "A debtor's claim for injuries to the person, even if unliquidated at the time the petition was filed, is property of the bankruptcy estate as of the commencement of the case. [citing *Sierra Switchboard*]." (See also *In re Ellwanger* (Bankr. W.D.Wash. 1992) 140 B.R. 891 [California's public policy against the assignment of legal malpractice claims did not preclude the legal malpractice claim from being estate property].)

 Plaintiff's claims in the instant case are of a mixed type, including claims for economic damages (i.e., loss of earnings, benefits, etc.) and also for personal injury (emotional distress). As the above authorities show, even the portion of plaintiff's claim for personal injury is included within the bankruptcy estate. There is no suggestion that the other portions of plaintiff's claim are not equally the property of the bankrupt estate. (See, e.g., *Harris v. St. Louis University, supra,* 114 B.R. 647, 648 [age and sex discrimination claim property of bankruptcy estate].) Whether plaintiff might be entitled to an exemption for some portion of her claim from the bankruptcy court is an issue into which we need not delve. (Cf. *Haaland v.*

---

[1]Since we conclude that, under Ninth Circuit law, the causes of action advanced by plaintiff in the instant case are the property of her bankruptcy estate, we need not delve into the Enforcement of Judgments Act (Code Civ. Proc., § 680.010 et seq.) or other law which might bear upon what property is reachable by creditors or what causes of action are assignable under California law.

*Corporate Management, Inc.* (Bankr. S.D.Cal. 1989) 172 B.R. 74 [discussing personal injury exemption set forth in Code Civ. Proc., § 704.140].) It is enough to have determined that plaintiff's claim was the property of her bankruptcy estate, and that plaintiff consequently lacked standing to bring this action. (Cf. *Bostanian* v. *Liberty Savings Bank* (1997) 52 Cal.App.4th 1075, 1079 [61 Cal.Rptr.2d 68] [although chapter 11 debtor in possession has standing to sue, chapter 7 debtor lacks such standing]; *In re Louden* (Bankr. E.D.Ky. 1989) 106 B.R. 109 [since there is no debtor in possession in chapter 7 case, debtor has no standing to sue].)[2]

Plaintiff could theoretically regain her lost standing to pursue her claims against Northrop if her claims were abandoned by the bankruptcy trustee. (See, e.g., *Harris* v. *St. Louis University, supra,* 114 B.R. at p. 648.) ▓ Property of a bankruptcy estate can be abandoned by three methods: (1) after notice and hearing, the trustee may unilaterally abandon property that is "burdensome . . . or . . . of inconsequential value" (11 U.S.C. § 554(a)); (2) after notice and hearing, the court may order the trustee to abandon such property (11 U.S.C. § 554(b)); (3) any property *which has been scheduled,* but which has not been administered by the trustee at the time of closing of a case, is abandoned by operation of law. (11 U.S.C. § 554(c).)

▓ Plaintiff did not contend or plead that her claims against Northrop were abandoned by the trustee either unilaterally or pursuant to court order. Records that were judicially noticed revealed that plaintiff's claim against Northrop was not listed on the asset schedules she filed with the bankruptcy court. Property that is neither abandoned nor administered by the bankruptcy trustee remains property of the bankruptcy estate. (11 U.S.C. § 554(d); see, e.g., *Harris* v. *St. Louis University, supra,* 114 B.R. at p. 649 [age and sex discrimination causes of action not susceptible to abandonment because not scheduled, hence remained property of bankruptcy estate]; *Sierra Switchboard Co.* v. *Westinghouse Elec.. Corp., supra,* 789 F.2d at pp. 709-710 [abandonment requires notice to creditors; emotional distress claim could

---

[2]See also *Kaley* v. *Catalina Yachts* (1986) 187 Cal.App.3d 1187 [232 Cal.Rptr. 384], in which plaintiff first filed a personal injury action, then filed a bankruptcy of unspecified type. The *Kaley* court acknowledged that the suit was the property of the bankruptcy estate, but nevertheless ruled that pursuant to Code of Civil Procedure former section 385 the plaintiff retained standing to pursue a personal injury claim. The validity of *Kaley* is questionable, since it runs contrary to the purpose of the real party in interest rule of ensuring the res judicata effect of any resulting judgment. (See, e.g., Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra,* ¶ 2:4, p. 2-2; *Jones* v. *Harrell, supra,* 858 F.2d 667 [debtor's settlement of personal injury claim invalid].) *Kaley* was similarly criticized in *Bostanian* v. *Liberty Savings Bank, supra,* 52 Cal.App.4th 1075, 1082. *Kaley* is distinguishable from the instant case in any event. Here plaintiff did not file suit until after filing for chapter 7 bankruptcy protection, and hence clearly filed suit at a time when she did not have standing.

not have been abandoned because there was no notice, therefore remained property of bankruptcy estate]; see also, e.g. extensive discussion in *Adams v. Manown* (1992) 328 Md. 463 [615 A.2d 611, 618-619].)

California Code of Civil Procedure section 367 requires, subject to exceptions not pertinent here, that every action be prosecuted in the name of the real party in interest. (See, e.g., Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶¶ 2:1 to 2:79, pp. 2-1 to 2-78; 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 103 et seq., p. 162 et seq.) Plaintiff was not the real party in interest, and hence was not the proper party to pursue this claim—i.e. she lacked standing. (See *Bostanian* v. *Liberty Savings Bank*, *supra*, 52 Cal.App.4th at p. 1079, Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶¶ 2:1, 2:7, pp. 2-1, 2-3 [only real party in interest has standing to sue; causes of action are property of bankruptcy estate, trustee is therefore real party in interest unless trustee abandons]; 4 Witkin, Cal. Procedure, *supra*, Pleading, § 127, pp. 184-185.)

b. *The effect of lack of standing.*

Although the trial judge and Northrop were therefore correct that plaintiff lacked standing, their apparent assumption that plaintiff's lack of standing was fatal to her complaint was mistaken. It is true that a complaint filed by a party who lacks standing is subject to demurrer. (See, e.g., Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 2:77, p. 2-20; 4 Witkin, Cal. Procedure, *supra*, Pleading, § 105, pp. 105-106.)[3] The rationale for such a demurrer is generally stated to be that a complaint by a party lacking standing fails to state a cause of action by the particular named plaintiff, inasmuch as the claim belongs to somebody else. (see, e.g., Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 2:77, p. 2-20.) A more accurately stated rationale would be that there is a defect in the parties, since the party named as plaintiff is not the real party in interest. (Code Civ. Proc., § 430.10, subd. (d) [demurrer may be based on ground that there is a "defect . . . of parties."].)[4] In any event, " '[a] suit is sometimes brought by a plaintiff without the right or authority to sue, and the amendment seeks to substitute the real party in interest. Although the original

---

[3]See also *Billmeyer* v. *Plaza Bank of Commerce* (1995) 42 Cal.App.4th 1086 [50 Cal.Rptr.2d 119], in which a demurrer to a lender liability claim filed by chapter 7 debtors was sustained for lack of standing, and the lender liability claims were dismissed. In *Billmeyer*, however, an amended complaint was later filed naming the trustee as plaintiff and reinstating the lender liability claims. Standing was apparently not further contested, and the matter was ultimately disposed of on res judicata grounds. *Billmeyer* is discussed further, below in the text.

[4]This is especially so in light of the case law, discussed below, holding that in determining whether a cause of action is stated, the focus is on the factual allegations against the defendant, not upon the identity of the plaintiff. Hence the case law allows amendment to

complaint does not state a cause of action *in the plaintiff*, the amended complaint by the right party restates the identical cause of action, and amendment is freely allowed.' " (*Garrison* v. *Board of Directors* (1995) 36 Cal.App.4th 1670, 1678 [43 Cal.Rptr.2d 214], quoting 5 Witkin, Cal. Procedure (3d ed. 1985) Pleadings, § 1150, now 5 Witkin, Cal. Procedure (4th ed. 1997) Pleadings, § 1155, italics in original.)

█ The California Supreme Court has held that if the facts of the cause of action against the defendant would not be "wholly different" after amendment, a complaint filed by a party without standing may be amended to substitute in the real party in interest. (*Klopstock* v. *Superior Court, supra,* 17 Cal.2d 13, 19-22; see also *Kaley* v. *Catalina Yachts, supra,* 187 Cal.App.3d 1187, 1195, fn. 7 ["In the case of a trustee in bankruptcy seeking to be substituted in, the trial court lacks discretion not to allow the substitution. (11 U.S.C. §§ 541(a)(1) and 323(a).)"].) In *Klopstock*, the defendant contended that an amendment substituting "the newly appointed administratrix" as plaintiff "was, in effect, the institution of an entirely new suit on a different cause of action, which cannot be accomplished by an amendment of the complaint." (*Klopstock, supra,* 17 Cal.2d at p. 16.) The *Klopstock* court rejected this contention, finding that an amendment substituting the real party in interest as plaintiff did not raise a new cause of action and was permissible pursuant to Code of Civil Procedure section 473. (17 Cal.2d at p. 21.) The *Klopstock* court reasoned: "In determining whether a wholly different cause of action is introduced by the amendment technical considerations or ancient formulae are not controlling; nothing more is meant than that the defendant not be required to answer a wholly different legal liability or obligation from that originally stated." (*Id.* at p. 20.) The court concluded that where the proposed amendment simply substituted the real party in interest in place of a party who lacked standing, and did not constitute the statement of a wholly different factual claim, allowing amendment was "well within the liberal discretion which is granted to the courts by Code of Civil Procedure, section 473." (*Id.* at p. 21.) The court further explained that this conclusion was supported by the reasoning of cases from California and elsewhere that had approved amendments to substitute in a real party in interest even after the expiration of the statute of limitations, and had ruled that such amendments "relate back" to the time of the filing of the initial complaint so as to avoid the bar of the statute. (*Id.* at pp. 21-22.)

Subsequent cases have recognized that *Klopstock* stands for the proposition that California Code of Civil Procedure section 473 must be liberally construed to permit amendment to substitute a plaintiff with standing for one

---

change the plaintiff and holds that such an amendment does not amount to a change in the cause of action for statute of limitations purposes.

who is not a real party in interest. (See, e.g., *Powers* v. *Ashton* (1975) 45 Cal.App.3d 783, 790 [119 Cal.Rptr. 729]; *California Air Resources Bd.* v. *Hart* (1993) 21 Cal.App.4th 289, 300 [26 Cal.Rptr.2d 153].) The *Powers* court elaborated: "The discretion vested by section 473 must be exercised liberally in favor of amendment where a demurrer is interposed to an initial complaint. If such a demurrer is sustained without leave to amend, a reviewing court is compelled to find an abuse of discretion in denying leave where the plaintiff presents a tenable basis of amendment . . . ." (*Powers* v. *Ashton, supra,* 45 Cal.App.3d at p. 790.) Although here we are concerned with a motion for judgment on the pleadings, such a motion "is in effect a substitute for a general demurrer. [Citations.]" (*Olsen* v. *Lockheed Aircraft Corp.* (1965) 237 Cal.App.2d 737, 742 [47 Cal.Rptr. 242].) Hence the same standards regarding leave to amend apply.

The Supreme Court's rationale and citation of authority in *Klopstock* demonstrates that the policy requiring liberal leave to amend is not dependent on whether the statute of limitations period has expired. According to *Klopstock*, an amendment to substitute the real party in interest as plaintiff is entitled to relation-back effect so long as the cause of action against the defendant is not factually changed. (*Klopstock* v. *Superior Court, supra,* 17 Cal.2d at pp. 21-22.) Later, in *Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596 [15 Cal.Rptr. 817, 364 P.2d 681], the Supreme Court explained that the law allowing liberal amendment of pleadings after expiration of the statute of limitations period has actually *broadened* after *Klopstock.* "[Prior] cases held that a mere change in legal theory would not prevent an amendment from relating back but that an amendment would not relate back if it set forth 'a wholly different cause of action,' i.e., 'a wholly different legal liability or obligation.' [Citing, inter alia, *Klopstock.*] In the *Klopstock* case it was unnecessary to consider whether the right of a party to amend should be *further* broadened, since we held that the amendment there involved was proper under the 'wholly different cause of action' test." (*Austin, supra,* 56 Cal.2d at pp. 600-601, italics added.) The *Austin* court went on to note that the "modern" rule allowed an amendment to relate back so long as recovery is sought *on the same general set of facts* as those alleged in the original complaint. (*Id.* at p. 600.)

*Klopstock* was decided on the more restrictive "wholly different cause of action" test. *Klopstock* held that an amendment to substitute the real party in interest for a plaintiff lacking standing passed even that more restrictive test. Such an amendment, changing nothing other than the identity of the plaintiff, would clearly pass the modern "same general set of facts" test. "California allows great liberality in the amendment of pleadings, particularly when the only change is a substitution of parties without alteration of the

substantive grounds of the suit. [Citations.] A plaintiff may amend his complaint to sue in his representative rather than individual capacity without stating a new cause of action. [Citations.] . . . [¶] . . . 'It should be borne in mind . . . that the substantive cause of action counted on in the amended complaint has not been changed. It remains precisely the same as that stated in the original pleading. No new facts are alleged as a ground of recovery, the only change being in the name of the plaintiff and the capacity in which he sues . . . . This being so, the change effected by the amendment is obviously in no just sense the bringing of a new action. It is one of form rather than of substance, and in the interests of justice is to be treated as such, rather than to adopt a view which would result in an irretrievable bar to all remedy. Under the modern doctrine, the discretionary power of the court to such end is to be liberally exerted in favor of, rather than against, the disposition of a case upon its merits . . . .' " (*Olsen* v. *Lockheed Aircraft Corp.*, *supra*, 237 Cal.App.2d at p. 741.) Subsequent authorities citing *Klopstock* follow this same rule.

In *Garrison* v. *Board of Directors*, *supra*, 36 Cal.App.4th 1670, for example, an individual petitioner failed to state a claim due to failure to exhaust administrative remedies; he then filed an amended petition, after the statute of limitations period had expired, alleging that he was now suing in a representative capacity on behalf of an organization. The trial court held that his petition was barred by the statute of limitations because the organization had not become a plaintiff until after the statute of limitations period had expired. The *Garrison* court reversed, stating: "California courts have shown a liberal attitude toward allowing amendment of pleadings to avoid the harsh results imposed by statutes of limitations. [Citing *Klopstock*.] Thus, proper amendments to an original complaint 'relate back' to the date of the filing of the original complaint, despite the amendments being made after the statute of limitations has expired. [Citation.] The policy behind statutes of limitations is to put defendants on notice of the need to defend against a claim in time to prepare a fair defense on the merits. This policy is satisfied when recovery under an amended complaint is sought on the same basic set of facts as the original pleading. [Citation.]" (*Garrison*, *supra*, 36 Cal.App.4th at pp. 1677-1678.)

Witkin has summarized the authorities as follows: "[T]he allowance of amendment and relation back to avoid the statute of limitations does not depend on whether the parties are technically or substantially changed; rather the inquiry is as to whether the nature of the action is substantially changed. And most of the changes in parties do not change the nature of the action." (5 Witkin, Cal. Procedure, *supra*, Pleading, § 1151, pp. 609-610; formerly 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1147, quoted in

*California Air Resources Bd.* v. *Hart, supra,* 21 Cal.App.4th 289, 300 [citing both Witkin and *Klopstock*].)

 In the instant case, plaintiff requested a stay in the trial court to reopen her bankruptcy case in order either to substitute the trustee as real party in interest or to obtain the trustee's abandonment of her claim. The trial court, however, denied the stay request on the grounds that "if she were able to convince the bankruptcy trustee to abandon her claims, and attempted to reallege standing, the statute of limitations on her claims would have run, as such an amendment would not relate back."[5] This conclusion was legally erroneous.[6]

In support of the proposition that "such an amendment would not relate back" and that the statute of limitations would have run, the trial court cited *Coats* v. *K-Mart Corp.* (1989) 215 Cal.App.3d 961 [264 Cal.Rptr. 12]. In *Coats*, the mother of a decedent did not obtain appointment as administratrix of the decedent's estate before filing a wrongful death action. (*Id.* at pp. 964-965.) Although *Klopstock* had involved a situation similar to *Coats*, in which an action should have been filed by an administratrix but instead was filed by a party who lacked standing, *Klopstock* was not cited in *Coats*. Against the backdrop of the *Klopstock* line of authority, which holds that Code of Civil Procedure section 473 must be liberally applied to permit

---

[5]Here the trial court was contemplating the possibility of an amendment to plead an abandonment (which would establish plaintiff as the real party in interest), as opposed to an amendment substituting in the trustee as real party in interest. These are, however, two alternative routes to the same destination. Both methods result in the claim being pursued by the real party in interest; neither results in a factual alteration of the claim. The purpose of the real party in interest requirement is to ensure that a resulting judgment will impose a res judicata effect on the claim advanced, so that relitigation will not be necessary upon a later finding that the first party to pursue the claim was not the real party in interest. (See, e.g., Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra,* ¶ 2:4, p. 2-2.) Thus whether plaintiff substitutes in the trustee as real party in interest, or whether the trustee abandons the claim and allows plaintiff to proceed in her own name, is an immaterial distinction. The result, on the reasoning of *Klopstock*, is the same in either case—the case proceeds with the real party in interest named as plaintiff.

[6]This conclusion was apparently also mistaken as a matter of fact. Plaintiff contends on appeal that the statute of limitations had not yet run at the time of the trial court's minute order, so that even if the trial court were correct that no relation back effect was available, no relation-back effect was needed to avoid the statute of limitations. Northrop does not contest this assertion in its briefing. The record contains plaintiff's complaint, which has attached as an exhibit a letter from the Department of Fair Employment and Housing advising plaintiff that she had one year from November 1, 1996, within which to sue. The minute order granting Northrop's motion for judgment on the pleadings was dated August 1, 1997, and the judgment was signed and filed on August 25, 1997, both less than one year from the date of plaintiff's right-to-sue letter. The record thus reflects that, even assuming it were true that an amendment to substitute in the real party in interest would not be entitled to relation-back effect (which is not true, as discussed in the text), the statute of limitations period still had more than two months remaining at the time of the trial court's order and judgment.

amendment to substitute a plaintiff with standing for one who lacks standing, the result in *Coats* can only be explained by the lack of citation to *Klopstock* and the peculiar facts of *Coats*.

In *Coats*, the mother of a decedent sued under Probate Code former section 573, which allowed causes of action to be brought on behalf of a decedent's estate by the decedent's "personal representative," defined as an administrator. Plaintiff specifically alleged in the original and two amended complaints that she was in fact the administratrix of her son's estate, even though she was not. There was no reason for her to allege that she was the administratrix unless she knew that she needed the status of administratrix in order to pursue the estate's claims. Nevertheless, she did not actually become the administratrix until the litigation was nearly five years old, and then only as a belated response to two years' worth of motions to compel production of decedent's medical records (which required the authorization of a duly appointed administratrix), and two years' worth of court orders to provide that authorization and, eventually, to furnish proof of appointment as administratrix. (*Coats* v. *K-Mart Corp.*, *supra*, 215 Cal.App.3d at pp. 964-965.)

The trial court "deemed" the action to have been filed as of the date of the administratrix appointment nearly six years after the decedent's injuries. (*Coats* v. *K-Mart Corp.*, *supra*, 215 Cal.App.3d at p. 965.) Upon receiving the benefit of this "deeming," defendant amended its answer to plead a statute of limitations defense and then moved for judgment on the pleadings. So far as the *Coats* opinion reveals, plaintiff did not move for leave to amend to substitute the newly appointed administratrix as the real party in interest. The trial court granted the motion for judgment on the pleadings. In the course of its rulings, the trial court admonished counsel for the plaintiff: " 'I think you are a little fast and loose with some representations to the court last time, Counsel. When this was in before, there were representations that she was the administrator. At the time you must have filed the petition for appointment of her as an administrator.' " (*Id.* at p. 965, fn. 3.)

On appeal, the court noted that appellant admitted she was not the administratrix when she filed suit The court stated: "We are presented with the novel question: May the "relation back" doctrine be applied to confer standing on a plaintiff who *knowingly* lacked it when suit initially was filed? We answer in the negative." (*Coats* v. *K-Mart Corp*, *supra*, 215 Cal.App.3d at p. 967, italics added.)

The *Coats* court summarized "what this case is not," stating: "In short, it does not present us with an appellant who, in blameless good faith, believed

she was the administratrix of decedent's estate when the initial complaint was filed." The court noted that it was not a "traditional 'relation back' case, where the doctrine was applied to . . . protect the rights of a plaintiff who had standing to sue when the initial complaint was filed, but in a different capacity." (*Coats* v. *K-Mart Corp., supra*, 215 Cal.App.3d at pp. 967-968.) The court concluded: "Here, appellant knew, or most certainly should have known, that she was not the administratrix of decedent's estate, although she had alleged in three complaints that she was the administratrix and which she, through counsel, had represented to the court on numerous occasions. . . . She was not [the administratrix]; and there are no facts in the record which indicate she made any good faith effort to be timely appointed or to comply with the pertinent requirements of the Probate Code. Under these circumstances, we hold that the court below did not abuse its discretion when it did not apply the 'relation back' doctrine."[7] (*Id.* at p. 968.)

*Coats* did not consider *Klopstock*, and insofar as the record on appeal reflects, *Klopstock* was not cited to the trial court in the instant action.[8] To the extent the trial court in this case interpreted *Coats* to hold that amendments substituting in a real party in interest do not "relate back," such an interpretation would conflict with *Klopstock* and its progeny. *Klopstock* is a Supreme Court opinion while *Coats* is a Court of Appeal opinion. Hence *Klopstock* and the cases following its liberal rule of amendment control. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937] [Supreme Court decision must be followed by all California state courts, including Courts of Appeal]; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1997) ¶ 14:192, p. 14-53.) *Coats* has apparently never been cited in any other reported opinion. *Klopstock* has, however, been cited and followed many times in many other reported opinions. Moreover, to the extent that *Coats*, due to its unique facts and procedural background, might not be considered wholly inconsistent with the *Klopstock* line of decisions, it is nevertheless not controlling here. Whether due to its probate setting, the plaintiff's history of knowing misrepresentations to the defendant and to the court, the opinion's lack of substantive "relation-back" analysis, the lack of a motion by

---

[7]Although *Coats* did not expressly so state, it presumably was applying a Code of Civil Procedure section 473 analysis in holding that "the court below did not abuse its discretion when it did not apply the 'relation back' doctrine." (*Coats* v. *K-Mart Corp., supra*, 215 Cal.App.3d at p. 968.) However, a "relation-back" issue normally concerns whether *an amended pleading* "relates back." The issue in *Coats*, by contrast, was the somewhat novel issue of whether an appointment as an administratrix—without any amendment or motion to amend—would "relate back." Such an "automatic" relation-back would apparently be unprecedented, and this is another distinguishing feature of *Coats*.

[8]Moreover, since plaintiff in *Coats* did not move to amend to substitute in the administratrix as real party in interest, it is clear that there never was a proposed plaintiff in *Coats* who had standing.

plaintiff to amend in *Coats*, etc., *Coats* provides no basis for a refusal to allow amendment in the instant case.

c. *Plaintiff should have been given leave to amend.*

The trial court was correct that leave to amend need not be granted if any possible amendment would inevitably be barred by the statute of limitations. "The law neither does nor requires idle acts." (Civ. Code, § 3532.) However, even disregarding the apparent fact that the statute of limitations had not yet expired at the time of the trial court's rulings (see *ante*, fn. 6), the *Klopstock* line of cases makes clear that an amendment to substitute in the real party in interest is entitled to relation-back effect. The effect of plaintiff's lack of standing, therefore, was simply that plaintiff needed to amend. "If a pleading is defective but amendable, judgment on the pleadings should be granted but with leave to amend. [Citations.]" (*Olsen* v. *Lockheed Aircraft Corp., supra,* 237 Cal.App.2d at p. 742. Cf. *Cain* v. *Hyatt, supra,* 101 B.R. 440, 443 [action stayed pending substitution of bankruptcy trustee or other action allowing trial to proceed].)[9]

II. JUDICIAL ESTOPPEL.

a. *The origin of the judicial estoppel theory in the bankruptcy context: lender liability cases.*

The seminal case concerning judicial estoppel in the bankruptcy context is the two-to-one decision in *Oneida Motor Freight, Inc.* v. *United Jersey Bank* (3d Cir. 1988) 848 F.2d 414. The debtor in *Oneida* filed a chapter 11

---

[9]Northrop cites *Saks* v. *Damon Raike & Co.* (1992) 7 Cal.App.4th 419 [8 Cal.Rptr.2d 869] for the proposition that "[i]f any person other than the real party in interest brings an action, it must be dismissed." (*Id.* at p. 427.) *Saks,* however, does not support this proposition. In *Saks* the plaintiffs were granted several opportunities to amend, but "declined further to amend their claims when given an opportunity to do so." (*Id.* at p. 426.) Thus the court noted that the plaintiffs in *Saks* "cannot contend that the trial court abused its discretion by failing to give them another opportunity to amend," and that "[i]nstead they argue that the trial court erred in sustaining the demurrers because the second amended complaint pleads facts that establish their standing to sue . . . ." (*Ibid.*) The court found, however, that as beneficiaries of a trust they did not have standing to sue on behalf of the trust. Second, *Saks* involved an issue of probate jurisdiction, and the plaintiffs "did not commence their action in the probate department as the controlling statutes require." (*Id.* at p. 429.) *Saks* found that "[u]nder both the common law and the provisions of the Probate Code governing the administration of trusts, [plaintiffs'] only proper course was to proceed against the trustee in the probate department . . . ." (*Id.* at p. 430.) *Saks* makes clear that leave to amend to cure a real party in interest defect should be granted, that beneficiaries of a trust do not have standing to sue on behalf of the trust, and that actions required by the Probate Code to be filed in the probate department should be filed in the probate department. Nothing in *Saks* supports Northrop's position on this appeal.

(reorganization) bankruptcy proceeding. In that proceeding, the major creditor was the debtor's bank. The bank sought and obtained in the bankruptcy action "an order establishing the validity and extent of the bank's lien" on the debtor's assets. The debtor "acknowledged its debt to the bank . . . without any mention of a setoff." (*Id.* at p. 417.) Later, the bankruptcy court approved a settlement "among the bank, Oneida [the debtor], and the official unsecured creditors' committee" and approved an "unconditional payment" of millions of dollars by the debtor to the bank. (*Id.* at p. 415.) During these proceedings, the debtor neither mentioned nor scheduled any potential claim against the bank. However, after the bankruptcy court had confirmed the debtor's plan of reorganization, the debtor filed a lender liability action against the bank. The trial court dismissed the lender liability claim on grounds of res judicata, holding "that since [the debtor's] claims against the bank arose from the same series of transactions which were the subject of extensive prior bankruptcy proceedings, its failure to bring this particular claim to the bankruptcy court's attention violated fundamental principles of preclusion and barred Oneida [the debtor] from proceeding with the action." (*Id.* at p. 416 and fn. 3, and p. 420.)

On appeal, the Third Circuit considered whether the debtor "is estopped from litigating this action by the preclusive effect of prior bankruptcy proceedings." (*Oneida Motor Freight, Inc.* v. *United Jersey Bank, supra,* 848 F.2d at p. 415.) Even though the trial court had based its ruling on the res judicata effect of those prior bankruptcy proceedings, the appellate court instead ruled on different grounds, finding that "[b]y virtue of [the debtor's] failure to disclose, equitable and judicial estoppel operate against further litigation by [the debtor]." (*Ibid.*) The court noted that "[f]our separate orders were entered regarding the validity, priority and extent of the bank's claim against [the debtor]. The end result of these orders was the establishment and confirmation of the amount of the bank's claim . . . . No affirmative defenses, counterclaims or objection to the claim were pleaded or raised in connection with entry of these orders." (*Id.* at p. 419.) Further, the court stated that the "practical effect" of the debtor's claim would be to require the bank "to make restitution of the amount realized on its bankruptcy claim," which would constitute a "collateral attack on the bankruptcy court's order confirming the reorganization plan." (*Id.* at p. 418.)[10] Even though the debtor's reorganization plan had been modified to allocate part of any recovery from the bank to the creditors, the *Oneida* court affirmed dismissal of the action "[i]n order to preserve the requisite reliability of disclosure statements and to provide assurances to creditors regarding the finality of

---

[10]Although the discussions of prior proceedings and the collateral attack observation seem more consistent with a res judicata analysis, the *Oneida* court instead ruled on the basis of equitable and judicial estoppel.

plans which they have voted to approve." (*Ibid.*)[11] The *Oneida* court chose to "focus" its decision "on estoppel by reason of failure to disclose," (*id.* at p. 420) and found that "[t]he result of a failure to disclose such claims triggers application of the doctrine of equitable estoppel, operating against a subsequent attempt to prosecute the actions." (*Id.* at p. 417.)[12] With specific respect to the concept of "judicial estoppel," the court concluded that the debtor's "failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect." (*Id.* at p. 419.) Hence the *Oneida* court ruled that in order to protect the "integrity of the system," it is appropriate even to deprive innocent creditors of the chance of recovery.

The dissent in *Oneida* emphasized its concern for "Oneida's numerous unsecured creditors" who "had no way of protecting themselves and should not be required to contribute towards a windfall for an alleged wrongdoer." (*Oneida Motor Freight, Inc.* v. *United Jersey Bank, supra,* 848 F.2d at p. 420.) The dissent noted that the purpose of disclosure requirements in bankruptcy law is to protect creditors, and that this purpose was not served by eliminating what might have been a meritorious case against the bank. The dissent noted that "[t]he only real winner in the case as decided is the bank, whom the court has relieved of the responsibility of justifying its allegedly improper behavior." (*Id.* at pp. 422-423.) The dissent continued by noting that the majority decision "does not explain why it finds more even-handed alternatives inadequate. I see no reason, for example, why we could not allow this suit to proceed and simply make reference to the fact that the bankruptcy court has jurisdiction to entertain motions to amend or rescind the debtor's reorganization plan if such motions are brought by unsecured creditors who feel that [debtor's] nondisclosure has prejudiced them." (*Id.* at p. 423.) The dissent stated that judicial estoppel was an "extraordinary" remedy which should be invoked only "when a party's inconsistent behavior will otherwise result in a miscarriage of justice" and concluded by finding that "the court should not have applied estoppel doctrines to this case." (*Id.* at p. 424.)

█ A number of subsequent lender liability cases, occasionally with some equivocation, followed the majority opinion in *Oneida* to hold that the

---

[11]The outcome in *Oneida* seems fully supportable, as the trial court found, on grounds of res judicata. On the subject of equitable or judicial estoppel, however, the *Oneida* court's stated solicitude for the welfare of creditors is ironic. By its application of estoppel, the *Oneida* court acted to *deprive* the innocent unsecured creditors of the proceeds of a potentially viable claim against the bank, whose alleged misconduct was alleged to have caused the debtor's bankruptcy, and hence to have caused loss to the innocent unsecured creditors.

[12]No issue of standing was involved in *Oneida,* because *Oneida* was a chapter 11 (not chapter 7) case. In a chapter 11 case, a debtor in possession has standing to pursue causes of action. (See, e.g., *Bostanian* v. *Liberty Savings Bank, supra,* 52 Cal.App.4th 1075 [chapter 11 debtor in possession has standing to sue on own claim, even though chapter 7 debtor lacks such standing].)

failure to disclose a claim against a lender-creditor in a bankruptcy action, coupled with adjudication of the lender's claims against the debtor in the bankruptcy action, estopped the debtor from suing that lender later. (See, e.g., *Billmeyer* v. *Plaza Bank of Commerce, supra,* 42 Cal.App.4th 1086, 1091, fn. 2 [treating res judicata and judicial estoppel as components of "the general concept of issue preclusion as applied to claims in the bankruptcy context"]; *Conrad* v. *Bank of America* (1996) 45 Cal.App.4th 133, 148 [53 Cal.Rptr.2d 336] [finding *Oneida Motor Freight* rule "is specific to the circumstances presented, namely, where a chapter 11 debtor fails to list or otherwise identify a claim against a creditor during the proceedings leading up to confirmation of a reorganization plan," later suit against that creditor is barred].)

In *Matter of Baudoin* (5th Cir. 1993) 981 F.2d 736, a lender liability claim against a former creditor of the bankrupt estate in a chapter 7 proceeding was found to be within the scope of the bankruptcy "core proceeding" concept, and hence barred by the res judicata effect of the bankruptcy proceedings. Inasmuch as res judicata was found to apply, the *Baudoin* court declined to reach the issue of judicial estoppel. In *Billmeyer* v. *Plaza Bank of Commerce, supra,* 42 Cal.App.4th 1086, also a chapter 7 proceeding,[13] the trial court had ruled on res judicata grounds (just as had the trial court in *Oneida.*) The Court of Appeal, however, lumped res judicata, equitable estoppel and judicial estoppel within the general rubric of "issue preclusion," and found that "issue preclusion" applied to bar a subsequent lender liability claim. *In re Louden, supra,* 106 B.R. 109, 111, was a chapter 7 case in which the court specifically found a claim by the debtor against a bank barred by judicial estoppel. No suggestion has been offered that the law of "issue preclusion" applies differently in a chapter 7 as opposed to a chapter 11 context, and we therefore consider as precedent cases originating with both chapter 7 and chapter 11 proceedings.

The law of judicial estoppel in the bankruptcy context thus originated with trial court rulings of res judicata, but was expanded into the related but distinct concept of judicial estoppel. Absent from most of these decisions is any significant concern for the rights of the creditors of the bankruptcy estate, who generally are not parties to the action in which judicial estoppel is applied and who may be deprived of a potentially valuable asset by the application of judicial estoppel. (But see *Hay* v. *First Interstate Bank of Kalispell, N.A.* (9th Cir. 1992) 978 F.2d 555, 557 [lender liability action barred by estoppel because of failure to disclose in bankruptcy action, but no ruling made on "rights of creditors themselves to move to reopen the bankruptcy proceedings"].)

---

[13]Converted from an initial chapter 11 proceeding.

b. *Extension of judicial estoppel to the "non-privity" context.*

Although the decisions in the initial judicial estoppel cases in the bankruptcy context were all equally explainable as instances of application of res judicata (inasmuch as they all concerned lenders whose claims had previously been adjudicated in the bankruptcy proceedings), subsequent cases extended the judicial estoppel concept beyond the scope of defendants who were previously creditors of the bankruptcy estate. *Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co., supra,* 81 F.3d 355, for example, came from the same circuit that decided *Oneida.*[14] *Ryan* considered whether a "privity" requirement was included in "our newly articulated doctrine of judicial estoppel." (*Id.* at p. 359.) Although the *Ryan* court noted that ". . . we have never applied the doctrine of judicial estoppel for the benefit of parties who were not involved in the prior judicial proceeding," it also noted that "we have never expressly limited the doctrine's applicability to situations in which a litigant asserts an inconsistent position against the same party or its privy." (*Ibid.*)

The *Ryan* court concluded that since judicial estoppel " 'is intended to protect the courts rather than the litigants,' " it would adopt the "majority view" that "privity" is not required for the application of judicial estoppel. (*Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co., supra,* 81 F.3d at p. 360.) Hence *Ryan* determined that judicial estoppel could potentially apply to bar a subsequent suit against a noncreditor (whose rights therefore had not previously been adjudicated in the bankruptcy proceeding) if the claim against the noncreditor had not been scheduled in the bankruptcy. *Ryan* thus found that judicial estoppel could bar a claim even where res judicata could not apply, although the *Ryan* court went on to reject the specific claim of judicial estoppel raised in that case.

In *International Engine Parts, Inc.* v. *Feddersen & Co.* (1998) 64 Cal.App.4th 345 [75 Cal.Rptr.2d 178], the court applied the theory of judicial estoppel to bar suit against a party who had not been a bankruptcy creditor and hence had not previously had its rights and obligations adjudicated.[15] In *International Engine,* the debtor failed to schedule a claim against

---

[14]Judge Sloviter, who concurred in *Oneida*, also concurred in *Ryan*. Judge Stapleton, who dissented in *Oneida*, concurred in *Ryan*.

[15]No issue of standing was involved in *International Engine*, which involved a chapter 11 reorganization bankruptcy. (*International Engine Parts, Inc.* v. *Feddersen & Co., supra,* 64 Cal.App.4th 345, 348 [referring to "plan of reorganization"].) In a chapter 11 case, a debtor in possession has standing to pursue causes of action. (See, e.g., *Bostanian* v. *Liberty Savings Bank, supra,* 52 Cal.App.4th 1075 [chapter 11 debtor in possession has standing to sue on own claim, even though chapter 7 debtor lacks such standing].)

its accountants, who were not creditors of the bankruptcy estate.[16] The trial court granted summary judgment on grounds of judicial estoppel. The Court of Appeal stated that "[a]s the primary purpose of the doctrine of judicial estoppel is not to protect the litigants but to protect the integrity of the judiciary, the doctrine does not require reliance or prejudice before it may be invoked" (*id.* at p. 351) and " ' "[b]ecause it is intended to protect the integrity of the judicial process, it is an equitable doctrine invoked by a court at its discretion." ' " (*Id.* at p. 350.) The court then affirmed the summary judgment on grounds of judicial estoppel notwithstanding that the accounting firm had not been a party to the bankruptcy, and hence that there was no basis for a res judicata finding.[17]

Cases such as *Ryan* and *International Engine* can thus be cited as authority for the proposition that judicial estoppel can be applied to bar a claim beyond the reaches of res judicata and can preclude suit even against a party whose legal liabilities have never previously been determined, that the doctrine is intended to protect the judiciary without regard to the rights of litigants, that it may be invoked at the discretion of the trial court, that it requires neither reliance nor prejudice, and that it may bar a claim without regard to the rights of the creditors of the bankruptcy estate involved—in other words, that it is a very powerful and expansive doctrine indeed.

c. *Retrenchment and limitation of the judicial estoppel theory.*

Although the *Ryan* court held that "privity" was not a necessary component to its "newly articulated doctrine of judicial estoppel," (81 F.3d at p. 359) *Ryan* also made clear that restraint should be exercised in applying the doctrine, and expended considerable effort to back away from the more extreme implications of its prior seminal ruling in *Oneida*. *Ryan* emphasized that "this court has expressly left open the question of whether

---

[16]The briefing filed in *International Engine* contended that the accounting firm was a creditor of the bankruptcy estate, but the opinion says only that the accounting firm was listed "as the [debtor's] accounting firm with no fees due and owing to it." (*International Engine Parts, Inc.* v. *Feddersen & Co., supra,* 64 Cal.App.4th at p. 348.) *International Engine* thus treats the accounting firm as a noncreditor of the bankruptcy estate, but finds the claim against it nevertheless barred by judicial estoppel.

[17]As for the issue of prejudice to the innocent creditors of the bankruptcy estate who, in the words of the dissent in *Oneida,* "had no way of protecting themselves and should not be required to contribute towards a windfall for an alleged wrongdoer," *International Engine* states in footnote 2: "An argument may be made that if appellants [the debtor] were allowed to continue with their action, that the creditors from the long ago closed bankruptcy case could seek to reopen the bankruptcy on the theory that the debtor, by failing to disclose a potentially valuable asset, committed fraud on the creditors in bankruptcy. Because of our resolution of this matter, we need not ponder that question for long." (*International Engine Parts, Inc.* v. *Feddersen & Co., supra,* 64 Cal.App.4th at p. 353, fn. 2.)

. . . nondisclosure, standing alone, can support a finding that a plaintiff has asserted inconsistent positions within the meaning of the judicial-estoppel doctrine." (*Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co.*, *supra*, 81 F.3d at p. 362.) *Ryan* further stated that "[w]e need not decide this issue here, and we decline to do so, because we conclude that judicial estoppel would be inappropriate in any event as there is no evidence that [the debtor] acted in bad faith." (*Ibid.*)[18]

*Ryan* thus concluded that nondisclosure unaccompanied by bad faith is insufficient to justify the application of judicial estoppel. The *Ryan* court explained: "Asserting inconsistent positions does not trigger the application of judicial estoppel unless 'intentional self-contradiction is . . . used as a means of obtaining unfair advantage.' [Citation.] Thus, the doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.' [Citation.] An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing. . . . [T]he doctrine only applies to deliberate inconsistencies that are 'tantamount to a knowing misrepresentation to or even fraud on the court.' " (*Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co.*, *supra*, 81 F.3d at pp. 362-363.)

Turning to the specific facts involved in *Ryan*, the court noted that ". . . there is no basis in this case for inferring that [the debtor] deliberately asserted inconsistent positions in order to gain advantage—i.e., that it played fast and loose with the courts. There is no evidence that the nondisclosure played any role in the confirmation of the plan or that disclosure of the potential claims would have lead to a different result. Although it may generally be reasonable to assume that a debtor who fails to disclose a substantial asset in bankruptcy proceedings gains an advantage, the undisputed facts weigh against such an inference in this case. . . . [I]t appears that [the debtor] derived and intended no appreciable benefit from its nondisclosure." (*Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co.*, *supra*, 81 F.3d at p. 363.)

The *Ryan* court additionally noted that ". . . defendant cites no case in which a court held that intent to mislead or deceive could be inferred from the mere fact of nondisclosure, and we are aware of none. We are persuaded, however, that policy considerations militate against adopting a rule that the

[18]Notwithstanding its initial disclaimer that it would not decide whether nondisclosure, standing alone, is sufficient to justify invocation of judicial estoppel, the *Ryan* court later did "reject defendant's argument that *intent* may be inferred for purposes of judicial estoppel solely from nondisclosure," (*Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co.*, *supra*, 81 F.3d at p. 365, italics added) and found that ". . . policy considerations militate against adopting a rule that the *requisite intent* for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding." (*Id.* at p. 364, italics added.)

requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding. Such a rule would unduly expand the reach of judicial estoppel in post-bankruptcy proceedings and would inevitably result in the preclusion of viable claims on the basis of inadvertent or good-faith inconsistencies. . . . [W]e are unwilling to treat careless or inadvertent nondisclosures as equivalent to deliberate manipulation when administering the 'strong medicine' of judicial estoppel. [Citation.] . . . [¶] . . . We therefore reject defendant's argument that intent may be inferred for purposes of judicial estoppel solely from nondisclosure notwithstanding the affirmative disclosure requirement of the Bankruptcy Code. [¶] Because [the debtor] did not act with the intent to play fast and loose with the courts that is required for application of the judicial-estoppel doctrine, we conclude that the district court erred in granting summary judgment against [the debtor] on judicial estoppel grounds." (*Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co., supra,* 81 F.3d at pp. 364-365.)

In concluding, the *Ryan* court stated its "belief that judicial estoppel is an 'extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice.' *Oneida,* 848 F.2d at 424 (Stapleton, J., dissenting). It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts. Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to 'secure substantial equity.' " (*Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co., supra,* 81 F.3d at p. 365.) Thus the same court that pioneered the application of judicial estoppel in the bankruptcy context with the seminal *Oneida* case later was anxious to limit the scope of the *Oneida* ruling, even to the extent of quoting with approval from the dissent in *Oneida.* Clearly, "judicial estoppel" is a concept to be applied with restraint in egregious cases only and with clear regard for the facts of the particular case.

### d. The factual determinations necessary to support application of judicial estoppel could not be made on a motion for judgment on the pleadings.

As noted, the judgment here on appeal resulted from a motion for judgment on the pleadings. (Code Civ. Proc., § 438, subd. (c)(1)(B).) The motion relied "entirely on the allegations of Plaintiff's Complaint and documents from Plaintiff's bankruptcy proceeding." As the above discussion makes clear, Northrop's effort to invoke judicial estoppel to bar plaintiff's claims raised factual issues which could not be answered by exclusive reference to plaintiff's complaint and plaintiff's bankruptcy filings, and

hence could not be determined on a motion for judgment on the pleadings. (Accord, *In re Envirodyne Industries, Inc.* (Bankr. N.D.Ill. 1995) 183 B.R. 812, 824 [finding of intentional wrongdoing cannot be made on motion for judgment on the pleadings, hence decision cannot be made to apply judicial estoppel on motion for judgment on the pleadings].) Cases concerning judicial estoppel have generally been decided after a fact-finding or evidence-reviewing proceeding of some sort. (See, e.g., *Conrad* v. *Bank of America, supra,* 45 Cal.App.4th 133 [judgment notwithstanding the verdict after trial]; *Billmeyer* v. *Plaza Bank of Commerce, supra,* 42 Cal.App.4th 1086 [summary judgment]; *Hay* v. *First Interstate Bank of Kalispell, N.A., supra,* 978 F.2d 555 [summary judgment]; *Matter of Baudoin, supra,* 981 F.2d 736 [injunction and summary judgment]; *Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co., supra,* 81 F.3d 355 [summary judgment]; *International Engine Parts, Inc.* v. *Feddersen & Co., supra,* 64 Cal.App.4th 345 [summary judgment]; cf. *Oneida Motor Freight, Inc.* v. *United Jersey Bank, supra,* 848 F.2d 414, fn. 3 [discussing whether summary judgment motion was required, finding material facts undisputed in any event]; see also *Jackson* v. *County of Los Angeles* (1997) 60 Cal.App.4th 171 [70 Cal.Rptr.2d 96] [judicial estoppel applied by summary judgment in employment context].)

As stated in *Ryan,* nondisclosure in bankruptcy filings, standing alone, is insufficient to support the finding of bad faith intent necessary for the application of judicial estoppel. Yet nondisclosure, and nothing more, is all that could be established in this case by a review limited to plaintiff's complaint plus her bankruptcy filings. The *Ryan* court looked for *"evidence* that [the debtor] acted in bad faith." (*Ryan Operations G.P.* v. *Santiam-Midwest Lumber Co., supra,* 81 F.3d at p. 362, italics added.) *Ryan* stated that judicial estoppel applies only when the debtor engages in a an effort to obtain "unfair advantage" and engages in a "scheme to mislead the court," that any inconsistencies in the debtor's position must be "attributable to intentional wrongdoing" and " 'tantamount to a knowing misrepresentation to or even fraud on the court,' " and that a "good faith mistake" cannot support judicial estoppel. (*Id.* at pp. 362-363.)

Although it did not cite *Ryan,* the *International Engine* opinion is not necessarily contrary. (*International Engine Parts, Inc.* v. *Feddersen & Co., supra,* 64 Cal.App.4th 345.) *International Engine* was a summary judgment case. The court stated that "[t]he determination of the existence of judicial estoppel is a factual finding . . . ," and noted that application of judicial estoppel "should be done with great circumspection." (*Id.* at p. 354.) *International Engine* reviewed the evidence and concluded that "appellants were aware of the potential claim against respondent but intentionally chose not to

disclose it [in] the bankruptcy court." (*Id.* at pp. 352-353.) The court found "multiple subsequent failures to disclose the potential action" and that "for years [appellants] knew of respondent's potential liability" and that appellants "were fully aware of *their claim and did not act under ignorance, fraud or mistake.*" (*Id.* at p. 353.)[19] The record in the instant case would not permit equivalent findings here.

Clearly, consideration of whether a debtor has engaged in a deliberate scheme to mislead and gain unfair advantage, as opposed to having made a mistake born of misunderstanding, ignorance of legal procedures, lack of adequate legal advice, or some other innocent cause, requires consideration of the evidence. As the declaration filed by plaintiff in opposition to Northrop's motion for judgment on the pleadings shows, there is evidence which could negate the findings necessary to support the application of judicial estoppel in this case. Hence the trial court should not have attempted to decide this issue on a motion for judgment on the pleadings.

e. *State courts should not interfere with the operation of the bankruptcy laws under the guise of judicial estoppel.*

Primary objectives of bankruptcy law include giving the individual debtor a "fresh start" while equitably distributing the debtor's assets among the creditors. (See, e.g., *People* v. *Goebel* (1987) 195 Cal.App.3d 418, 422-423 [238 Cal.Rptr. 242].) In addition, when the rights of creditors are adjudicated in the bankruptcy proceeding, those creditors are entitled to the peace and benefits of res judicata finality, as discussed above. However, application of the doctrine of judicial estoppel in the absence of any basis for a res judicata finding, on the authority of *Oneida* and its progeny, can frustrate the primary objectives of bankruptcy law. It penalizes both the debtor and the creditors, while bestowing a windfall upon the third party noncreditor defendant, possibly the very party whose wrongful actions caused or contributed to the bankruptcy and consequent loss to the debtor and creditors. (Cf. *Adams* v. *Manown, supra,* 615 A.2d 611, 617-618 [available alternatives are not limited to giving debtor the benefit of a fraudulent nondisclosure or giving defendant the benefit of a windfall dismissal, correct analysis allows recovery by bankruptcy trustee for benefit of creditors].)

Moreover, in the chapter 7 context, there is generally little need to ponder the possible application of judicial estoppel in a case in which the debtor has failed to schedule a claim. Such a debtor will lack standing to sue on that claim, and a circumstance in which such a party without standing needs to be

---

[19]See *Jackson* v. *County of Los Angeles, supra*, 60 Cal.App.4th 171, 183 (judicial estoppel should apply only when the first position was not the result of ignorance, fraud, or mistake).

judicially estopped is difficult to conceive. Under the liberal policy of amendment enunciated in *Klopstock* and followed consistently thereafter (with the possible exception of *Coats*), such a debtor is entitled to leave to amend to attempt to cure her lack of standing. Once the trustee has either abandoned the claim or substituted in, no possibility of unfair advantage is apparent, and it appears doubtful that the types of findings discussed as necessary in *Ryan* could ever be made. Once an appropriate application is made to the bankruptcy court, the *bankruptcy court* can take appropriate action to promote bankruptcy goals and protect the bankruptcy court's process. These considerations confirm the wisdom of the statements in cases such as *Ryan* and *International Engine* that the doctrine of judicial estoppel ought to be applied only quite sparingly. In order to determine whether to apply the doctrine in a given case, the facts must be carefully evaluated. That cannot be done on a pleading motion, and hence the judgment here must be reversed.

## III. DISPOSITION.

The judgment is reversed. The matter is remanded with instructions to enter an order granting the motion for judgment on the pleadings with leave to amend insofar as the basis for the motion was lack of standing, and to enter an order denying the motion insofar as the basis for the motion was judicial estoppel. The order shall provide a reasonable time in which plaintiff may either secure the bankruptcy trustee's participation in, or abandonment of, plaintiff's claim. Further proceedings to be consistent with this opinion. Plaintiff to recover costs.

Boren, P. J., and Nott, J., concurred.