Filed 4/6/16  Jackson v. America's Servicing Co. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| GWENDOLYN JACKSON, | B261409 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC547723) |
| AMERICA'S SERVICING COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Mel Red Recana, Judge.  Affirmed in part, reversed in part, and remanded.

Gwendolyn Jackson, in pro. per., for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Bernard J. Kornberg and Kerry W. Franich for Defendants and Respondents, America's Servicing Company, a division of Wells Fargo Bank, N.A., and Mortgage Electronic Registrations Systems, Inc.; Peter L. Weinberger & Associates and Peter Weinberger for Defendant and Respondent, Lian Feng Investment LLC.

## INTRODUCTION

Plaintiff Gwendolyn Jackson lost her home in a nonjudicial foreclosure sale. She subsequently filed this action against parties involved in the foreclosure including, as is pertinent here, America's Servicing Company, a division of Wells Fargo Bank, N.A. (ASC), Mortgage Electronic Registrations Systems, Inc. (MERS) and the purchaser of the property, Lian Feng Investment LLC (Lian Feng). Plaintiff, who represented herself below and does so in this appeal, asserted ten causes of action in her complaint, all effectively seeking to set aside the foreclosure sale and return title of the property to her.

Lian Feng, ASC and MERS demurred to plaintiff's original complaint and the trial court sustained their demurrers without leave to amend as to all causes of action. On appeal, plaintiff challenges the court's ruling with respect to her claims for fraud, negligence and wrongful foreclosure. We conclude the court properly sustained the demurrers without leave to amend as to the fraud and wrongful foreclosure claims, but should have allowed plaintiff the opportunity to amend her negligence claim. Accordingly, we reverse the judgment in favor of ASC as to plaintiff's cause of action for negligence. In all other respects, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

In January 2006, plaintiff obtained a home loan in the amount of $382,000. Plaintiff executed a promissory note and a deed of trust in favor of the lender, BNC Mortgage. The deed of trust named MERS as a beneficiary under the deed of trust and stated MERS would act "solely as a nominee for Lender and Lender's successors and assigns."[1]

Plaintiff defaulted on the loan. In early February 2008, she received a notice of default from NDEX West, LLC, as an agent for MERS. Jackson contacted the mortgage loan servicer, ASC, repeatedly to ask for a loan modification. ASC offered

---

[1] On our own motion, and in the absence of any objection by the respondents, we take judicial notice of the deed of trust attached as an exhibit to the appellant's opening brief. (Evid. Code, §§ 452, subd. (h), 459, subd. (a).)

plaintiff one loan modification, but she rejected it as "unreasonable." ASC rejected approximately ten other modification requests over the course of the next six years.

In January 2014, Lian Feng purchased the property at a nonjudicial foreclosure sale. At that time, ASC had not yet responded to plaintiff's final request for a loan modification. Plaintiff received ASC's letter denying her loan modification request a few days after the foreclosure sale.

In February 2014, plaintiff filed a petition in federal court seeking bankruptcy protection under chapter 7 of United States Bankruptcy Code.[2] She listed the property on Schedule A (real property) and an unspecified secured claim in favor of ASC on Schedule D (creditors holding secured claims). Otherwise, plaintiff listed no significant assets and, in particular, she did not list her claims against Lian Feng, MERS or ASC as assets on the bankruptcy schedules. In March 2014, plaintiff initiated an adversary proceeding in the bankruptcy court naming ASC and MERS, among others. The complaint stated the same ten causes of action asserted in the present case and similarly sought to set aside the foreclosure sale. The bankruptcy court dismissed the adversary proceeding because plaintiff lacked standing to assert the claims. The court explained that all of plaintiff's assets, including her litigation claims, belonged to the bankruptcy estate and therefore could only be prosecuted by the trustee on behalf of the estate. The court discharged plaintiff from bankruptcy on June 16, 2014.

On June 5, 2014, plaintiff filed the complaint in the present case, naming as defendants ASC, MERS and Lian Feng, among others. Her complaint identifies the following ten causes of action: fraud; cancellation of a voidable contract; negligence; violation of Business and Professions Code section 17200; action to set aside trustee's sale; action to void or cancel trustee's deed upon sale; wrongful foreclosure; breach of the implied covenant of good faith and fair dealing; action to quite title; and injunctive

---

[2] The trial court properly took judicial notice of plaintiff's bankruptcy petition, the PACER docket relating to the bankruptcy proceeding, and the complaint filed in the adversary proceeding in bankruptcy court. We do so as well. (Evid. Code, § 459, subd. (a).)

relief.  In substance, plaintiff's causes of action rest on two primary theories of liability. First, plaintiff contends the foreclosure sale is void due to the defendants' purported lack of authority to foreclose.  Second, plaintiff contends the loan servicer, ASC, should have modified her loan and suspended the foreclosure.

ASC and MERS demurred to all causes of action on three alternative grounds. First, they contended plaintiff was barred from asserting all claims stated in the complaint because those claims still belonged to the bankruptcy estate and only the trustee could assert the claims.  Second, ASC and MERS argued plaintiff should be barred by principles of judicial estoppel from asserting her claims against them because plaintiff did not list those claims as assets in the schedules attached to her bankruptcy petition.  Third, ASC and MERS asserted each of plaintiff's causes of action failed to state a claim.  Lian Feng demurred separately, joining  in the arguments asserted by MERS and ASC, and also asserting plaintiff's stipulation to judgment in favor of Lian Feng in a prior unlawful detainer action conclusively established title to the property in favor of Lian Feng.

The trial court sustained the demurrers without leave to amend and plaintiff appealed from the resulting order.  The court subsequently entered judgments of dismissal.  We construe plaintiff's notice of appeal as a premature appeal from the judgments of dismissal.  (See Cal. Rules of Court, rule 8.104(d)(2); *Los Altos Golf & Country Club v. County of Santa Clara* (2008) 165 Cal.App.4th 198, 202-203 [construing appeal from order sustaining demurrer as appeal from subsequently entered judgment of dismissal].)

## CONTENTIONS

Plaintiff asserts the trial court erred by sustaining demurrers without leave to amend as to her causes of action for wrongful foreclosure, fraud and negligence.

## DISCUSSION

### A.    Standard of Review

"When reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's

4

properly pleaded or implied factual allegations. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Courts must also consider judicially noticed matters. (*Ibid.*) In addition, we give the complaint a reasonable interpretation, and read it in context. (*Ibid.*) If the trial court has sustained the demurer, we determine whether the complaint states facts sufficient to state a cause of action. If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. (*Ibid.*) If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred. (*Ibid.*) The plaintiff has the burden of proving that an amendment would cure the defect. (*Ibid.*)" (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 (*Schifando*); *Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 81 (*Siliga*), disapproved on another point by *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939-941 (*Yvanova*).)

In general, leave to amend an original complaint should be liberally granted. However, "[w]here there is a request for leave to amend but it is 'wholly insufficient to suggest whether or how the plaintiff could amend[ ] "the question as to whether or not [the trial] court abused its discretion" in denying leave to amend remains open on appeal. (Code Civ. Proc., § 472c.) But it is the *trial court's* discretion that is at issue; the reviewing court may only determine, as a matter of law, whether the trial court's discretion was abused. In our view an abuse of discretion could be found, absent an effective request for leave to amend in specified ways, only if a potentially effective amendment were both apparent and consistent with the plaintiff's theory of the case.' [Citation.]" (*Herrera v. Federal National Mortgage Assn.* (2012) 205 Cal.App.4th 1495, 1501 (*Herrera*), disapproved on another point by *Yvanova, supra*, 62 Cal.4th at pp. 939-941.) Accordingly, we will affirm an order sustaining a demurrer without leave to amend where the plaintiff does "not state in the trial court new facts demonstrating [she] could successfully amend the complaint and a potentially effective amendment is not apparent on appeal." (*Herrera, supra,* at p. 1501.)

5

### B.    Effect of Plaintiff's Bankruptcy

#### 1.    Standing

The court concluded plaintiff lacks standing to assert the claims stated in her complaint. Although it is unclear to what extent the court premised its decision on lack of standing, we address the issue because our analysis will impact any future proceedings in this case.

As the court correctly noted, "after a person files for bankruptcy protection, any causes of action previously possessed by that person become the property of the bankrupt estate. [Citations.]" (*Cloud v. Northrop Grumman Corp.* (1998) 67 Cal.App.4th 995, 1001 (*Cloud*).) As a result, the right to prosecute those causes of action rests with the bankruptcy trustee; the debtor loses the right to sue on and settle those litigation claims. (*Ibid.*) Here, all of the causes of action included in plaintiff's complaint are predicated on events which occurred before she filed her bankruptcy petition. Accordingly, all the causes of action became part of the bankruptcy estate when plaintiff filed for bankruptcy protection.

However, "[p]roperty that is neither abandoned nor administered by the bankruptcy trustee remains property of the bankruptcy estate." (*Cloud, supra,* 67 Cal.App.4th at p. 1003.) Where a debtor fails to list a cause of action on the asset schedules filed with the bankruptcy petition, that cause of action remains part of the bankruptcy estate even after the debtor is discharged. (*Ibid.*) Here, plaintiff failed to disclose the causes of action asserted in her present complaint on the schedules she filed with her bankruptcy petition. Accordingly, the court correctly concluded that all plaintiff's present causes of action remain a part of her bankruptcy estate and she does not have standing to assert them in the present action. We disagree, however, with the court's apparent conclusion that plaintiff's current lack of standing is fatal to her complaint. "The California Supreme Court has held that if the facts of the cause of action against the defendant would not be 'wholly different' after amendment, a complaint filed by a party without standing may be amended to substitute in the real party in interest." (*Cloud, supra*, 67 Cal.App.4th at p. 1005.) Accordingly, our courts

6

have held where, as here, a cause of action asserted by a plaintiff remains in a bankruptcy estate, the complaint may be amended to substitute the bankruptcy trustee as plaintiff. (See *id*. at pp. 1004-1005 ["Although the original complaint does not state a cause of action *in the plaintiff*, the amended complaint by the right party restates the identical cause of action, and amendment is freely allowed"]; *Bostanian v. Liberty Savings Bank* (1997) 52 Cal.App.4th 1075, 1081 (*Bostanian*) ["The trustee controls the bankruptcy estate, therefore, she or he is the real party in interest with standing to sue"].) It is therefore possible for plaintiff to amend her complaint to substitute the bankruptcy trustee as plaintiff and cure the standing defect.

Alternatively, the trustee could abandon the claims which would also cure the standing defect. "[A] Chapter 7 debtor may not prosecute on his or her own a cause of action belonging to the bankruptcy estate unless the claim has been abandoned by the trustee." (See *Bostanian, supra*, 52 Cal.App.4th at p. 1081.) "Property of a bankruptcy estate can be abandoned by three methods: (1) after notice and hearing, the trustee may unilaterally abandon property that is 'burdensome . . . or . . . of inconsequential value' (11 U.S.C. § 554(a)); (2) after notice and hearing, the court may order the trustee to abandon such property (11 U.S.C. § 554(b)); (3) any property *which has been scheduled,* but which has not been administered by the trustee at the time of closing of a case, is abandoned by operation of law. (11 U.S.C. § 554(c).)" (*Cloud, supra,* 67 Cal.App.4th at p. 1003.)

In short, the court erred to the extent it concluded plaintiff's current lack of standing is fatal to her complaint. "[L]leave to amend should have been granted either to substitute in the real party in interest (the bankruptcy trustee) or to obtain the trustee's abandonment of the claim." (*Cloud, supra,* 67 Cal.App.4th at p. 1000.)

### 2. Judicial Estoppel

The court also concluded the doctrine of judicial estoppel bars plaintiff's lawsuit because she failed to disclose her causes of action on her bankruptcy schedules. The court was incorrect.

Judicial estoppel protects the judicial process, promote fairness in litigation, and shield parties from improper strategies adopted by opponents. (*Gottlieb v. Kest* (2006) 141 Cal.App.4th 110, 131-132 (*Gottlieb*).) The doctrine prevents a party from asserting a position in litigation that is inconsistent with a prior position the party advocated with success. (*Id*. at pp. 130–131.) "The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' [Citations.]" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987.) "Because of its harsh consequences, the doctrine should be applied with caution and limited to egregious circumstances." (*Gottlieb, supra*, 141 Cal.App.4th at p. 132.)

Judicial estoppel is commonly applied following bankruptcy. Where a debtor in bankruptcy seeks to reorganize and fails to disclose a potential lawsuit in the bankruptcy proceeding, principles of equity will bar the debtor from bringing the lawsuit after the debtor is discharged from bankruptcy. In the seminal federal case on point, the Third Circuit Court of Appeals observed that a party seeking benefits in a Chapter 11 bankruptcy proceeding must "satisfy a companion duty to schedule, for the benefit of creditors, all his interests and property rights." (*Oneida Motor Freight, Inc. v. United Jersey Bank* (3d. Cir. 1988) 848 F.2d 414, 416.) California courts applying the *Oneida Freight* rule have held that principles of judicial estoppel will bar the assertion of a litigation claim in existence at the time of bankruptcy but which was undisclosed during bankruptcy reorganization proceedings. (See, e.g., *Conrad v. Bank of America* (1996) 45 Cal.App.4th 133, 160 (*Conrad*) ["[W]e find the rule expressed in *Oneida Motor Freight* and its progeny to be a bar to plaintiffs' claim for fraud since they failed to list or otherwise identify the claim in their bankruptcy proceedings up to and through the time the bankruptcy court issued orders confirming their reorganization plans"]; *Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1610 [plaintiff barred from asserting lender liability claim not disclosed during Chapter 13

8

bankruptcy reorganization proceedings].) Consistent with these principles, our courts have recognized the importance of protecting the rights of creditors in bankruptcy and have applied judicial estoppel with that goal in mind. The application of judicial estoppel in the context of bankruptcy reorganization not only preserves the integrity of the bankruptcy process, but also protects the rights of creditors, who may rely on the value of assets listed in the debtor's schedules during the reorganization process. (See, e.g., *Conrad, supra,* at p. 152 [emphasizing debtor should be estopped to assert claims undisclosed in reorganization because "reliance by creditors is the whole point of the disclosures required in a reorganization proceeding, and disclosure has been described as the central concept in a reorganization procedure. [fn. omitted] 'The importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. . . . ' [Citation.]"]

By contrast, California courts generally have not applied the principles of judicial estoppel following Chapter 7 bankruptcy proceedings. As discussed *ante*, any legal claim that is not scheduled in a Chapter 7 proceeding will not revert to the debtor on discharge; it remains the property of the bankruptcy estate. Thus, our courts have held "in the Chapter 7 context, there is generally little need to ponder the possible application of judicial estoppel in a case in which the debtor has failed to schedule a claim. Such a debtor will lack standing to sue on that claim, and a circumstance in which such a party without standing needs to be judicially estopped is difficult to conceive." (*Cloud, supra*, 67 Cal.App.4th at p. 1020-1021.) Further, because a debtor is entitled to leave to amend to attempt to cure her lack of standing to sue on claims undisclosed during the bankruptcy, the bankruptcy trustee will have the opportunity to substitute in or abandon the claim in any event. (*Ibid.*) Stated differently, our courts recognize that a debtor in a Chapter 7 bankruptcy gains no unfair advantage by failing to disclose a litigation claim because the undisclosed claim remains part of the bankruptcy estate. California courts further acknowledge that when the debtor attempts to address the issue of standing, "the *bankruptcy court* can take appropriate action to promote bankruptcy goals and protect the bankruptcy court's process." (*Ibid.*)

9

It appears the court was unaware of California law regarding judicial estoppel in the Chapter 7 bankruptcy context, relying instead on *Hamilton v. State Farm Fire & Cas. Co.* (9th Cir. 2001) 270 F.3d 778, a federal case which applied principles of judicial estoppel in the Chapter 7 context. We follow governing state law and conclude the court abused its discretion by finding plaintiff is barred from asserting her claims on the basis of judicial estoppel.

## C.     Background Legal Principles Regarding Nonjudicial Foreclosure

Our Supreme Court recently summarized the law that informs our decision in this case. "A deed of trust to real property acting as security for a loan typically has three parties: the trustor (borrower), the beneficiary (lender), and the trustee. 'The trustee holds a power of sale. If the debtor defaults on the loan, the beneficiary may demand that the trustee conduct a nonjudicial foreclosure sale.' [Citation.] The nonjudicial foreclosure system is designed to provide the lender-beneficiary with an inexpensive and efficient remedy against a defaulting borrower, while protecting the borrower from wrongful loss of the property and ensuring that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser. [Citation.]" (*Yvanova, supra,* 62 Cal.4th at p. 926.)

"The trustee starts the nonjudicial foreclosure process by recording a notice of default and election to sell. (Civ. Code, § 2924, subd. (a)(1).) After a three-month waiting period, and at least 20 days before the scheduled sale, the trustee may publish, post, and record a notice of sale. ([Civ. Code,] §§ 2924, subd. (a)(2), 2924f, subd. (b).) If the sale is not postponed and the borrower does not exercise his or her rights of reinstatement or redemption, the property is sold at auction to the highest bidder. ([Civ. Code,] § 2924g, subd. (a); [Citations.].)" (*Yvanova, supra,* 92 Cal.4th at p. 927, fn. 2 omitted.)

"The trustee of a deed of trust is not a true trustee with fiduciary obligations, but acts merely as an agent for the borrower-trustor and lender-beneficiary. [Citations.] While it is the trustee who formally initiates the nonjudicial foreclosure, by recording first a notice of default and then a notice of sale, the trustee may take these steps only at

10

the direction of the person or entity that currently holds the note and the beneficial interest under the deed of trust—the original beneficiary or its assignee—or that entity's agent. (§ 2924, subd. (a)(1) [notice of default may be filed for record only by '[t]he trustee, mortgagee, or beneficiary']; *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 334 [when borrower defaults on the debt, 'the beneficiary may declare a default and make a demand on the trustee to commence foreclosure']; *Santens v. Los Angeles Finance Co.* (1949) 91 Cal.App.2d 197, 202 [only a person entitled to enforce the note can foreclose on the deed of trust].)" (*Yvanova, supra*, 62 Cal.4th at p. 927.)

### D. Wrongful Foreclosure

#### 1. Plaintiff's claims

Plaintiff's primary goal in this suit is to set aside the foreclosure sale and recover title to her home. "After a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale. [Citation.] Generally, a challenge to the validity of a trustee's sale is an attempt to have the sale set aside and to have the title restored. [Citation.]" (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 103 (*Lona*).) In addition to the cause of action entitled "wrongful foreclosure," plaintiff also asserts causes of action entitled "cancellation of a voidable contract," "set aside trustee's sale," and "void or cancel trustee's deed upon sale." As each of these causes of action effectively asserts a claim for wrongful foreclosure, our analysis applies to all four causes of action.

"[T]he elements of an equitable cause of action to set aside a foreclosure sale are: (1) the trustee . . . caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a . . . deed of trust; (2) the party attacking the sale . . . was prejudiced or harmed; and (3) in cases where the trustor . . . challenges the sale, the trustor . . . tendered the amount of the secured indebtedness or was excused from tendering." (*Lona, supra,* 202 Cal.App.4th at p. 104.) As is pertinent here, a trustee's sale may be set aside where the trustee did not have the power to foreclose, or where the deed of trust is void.

11

Plaintiff contends the foreclosure sale is void because (1) MERS lacked the authority to transfer the deed of trust to Lian Feng, (2) MERS could not transfer title of the property to Lian Feng because it did not own the promissory note, (3) MERS lacked the authority to appoint NDEX West as trustee to conduct the sale, (4) NDEX West was unauthorized to record the notice of default because it was not an appointed trustee at that time, and (5) MERS failed to record the deed of trust. We address these arguments in turn.

### 2. As nominee for the lender, MERS had the authority to transfer the deed of trust

Plaintiff contends the foreclosure sale is void because MERS lacked the authority to transfer the deed of trust to Lian Feng. Specifically, plaintiff argues "[t]he assignment was improper because MERS had no beneficial interest it could transfer. MERS is not and has never been a beneficiary on any loan." This theory is fatally flawed.

The role MERS plays in the lending marketplace has been explained as follows: "MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records. [Citation.] [¶] Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust. [Citation.] Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender." (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 267 (*Fontenot*), disapproved on another point by *Yvanova, supra*, 62 Cal.4th at pp. 939-941.) MERS acted in this capacity in the present case: The 2006 deed of trust states MERS is "a separate corporation that is acting solely as

12

nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument."

The practical effect of the MERS system is significant. "California courts have held that a trustor who agreed under the terms of the deed of trust that MERS, as the lender's nominee, has the authority to exercise all of the rights and interests of the lender, including the right to foreclose, is precluded from maintaining a cause of action based on the allegation that MERS has no authority to exercise those rights." (*Siliga, supra,* 219 Cal.App.4th at p. 83.) As is pertinent here, our courts have held MERS has the authority to assign a deed of trust in connection with a nonjudicial foreclosure. In *Herrera, supra,* 205 Cal.App.4th 1495, the deed of trust at issue contained the following language: " 'Borrower [(plaintiffs)] understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." (*Id.* at p. 1504.) The court held that contractual language authorized MERS to assign the deed of trust and foreclose on the plaintiffs' property. (*Ibid.* ["MERS had the right to exercise all interests and rights held by the lender and its successors and assigns, including the right to assign the [deed of trust] and to foreclose on plaintiffs' property"].) The deed of trust at issue in this case contains identical language and therefore requires the same result. (See also *Fontenot, supra*, 198 Cal.App.4th at p. 271 ["the allegation that MERS was merely a nominee is insufficient to demonstrate that MERS lacked authority to make a valid assignment of the note on behalf of the original lender"].)

### 3. MERS, as nominee for the lender, had the authority to transfer the promissory note

Plaintiff also asserts "none of the Foreclosing Defendants had the standing to sell Plaintiff's property because none of the defendants were holders of both the Deed of

13

Trust and the Promissory Note." Further, plaintiff contends "[a]ny attempt to transfer the trust deed without ownership of the note is void under California law." In other words, plaintiff argues that in order for MERS to validly assign the deed of trust, MERS had to own the promissory note as well. Again, plaintiff's theory is fatally flawed.

"Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust. [Citation.] Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender, and granted the authority to exercise legal rights of the lender." (*Fontenot, supra*, 198 Cal.App.4th at p. 267.) In *Fontenot*, as here, plaintiff contended MERS lacked the authority to foreclose on the property because, as the mere nominee of the lender, MERS had no interest in the promissory note. Sustaining the demurrer, the court of appeal reasoned that "[c]ontrary to plaintiff's claim, the lack of a possessory interest in the note did not necessarily prevent MERS from having the authority to assign the note. While it is true MERS had no power *in its own right* to assign the note, since it had no interest in the note to assign, MERS did not purport to act for its own interests in assigning the note. Rather, the assignment of deed of trust states that MERS was acting as nominee for the lender, which *did* possess an assignable interest." (*Id.* at p. 270.) In other words, "the allegation that MERS was merely a nominee is insufficient to demonstrate that MERS lacked authority to make a valid assignment of the note on behalf of the original lender." (*Id*. at p. 271, footnote omitted.)

### 4. MERS, as nominee for the lender, had the authority to appoint a successor trustee

Plaintiff also argues the foreclosure sale is void because it was conducted by an invalidly appointed trustee, NDEX West. Plaintiff asserts that "[s]ince only a beneficiary can appoint a trustee, and MERS was never the actual beneficiary or lender, the substitution of trustee is null and void." This theory is also fatally flawed.

As explained, *ante*, MERS acts as a nominee for the lender and as such has the authority to exercise all rights held by the lender. Here, the 2006 deed of trust provides: "Lender, at its option, may from time to time appoint a successor trustee to any Trustee

14

appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located." Accordingly, under the express terms of the deed of trust, MERS (as nominee for the lender) had authority to appoint NDEX West as a trustee.

### 5. NDEX West, as an agent of MERS, had the authority to record the notice of default

Plaintiff also alleges the notice of default was ineffective—and the entire foreclosure void—because NDEX West recorded the notice of default and election to sell on February 20, 2008 but was not appointed as trustee until July 23, 2008. Plaintiff's argument is without merit. A notice of default may be recorded by a "trustee, mortgagee, or beneficiary, or any of their authorized agents." (Civ. Code, § 2924, subd. (a)(1); *Siliga, supra*, 219 Cal.App.4th at p. 85.) Here, the notice of default states NDEX West was acting as an agent for the beneficiary, not as a trustee. Our courts have approved the precise sequences of events, i.e., where an eventual trustee initiates a foreclosure as an agent of the lender, prior to appointment as the trustee. (*Ibid.*, [holding trustee authorized to record notice of default as beneficiary's agent before recording substitution of trustee].)

### 6. MERS was not required to record the deed of trust

In her fifth cause of action, plaintiff alleges "the Foreclosing Defendants never had the legal authority to foreclose ie, [*sic*] the authority to exercise the power of sale as an assignee of the note and Deed of Trust, because the foreclosing Defendants interest [*sic*] was never acknowledged or properly recorded in violation of Civil Code 2932.5 resulting in the non-judicial foreclosure sale being void ab initio."

On its face, Civil Code section 2932.5 does require an assignment to be validly recorded: "Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded." However,

15

section 2932.5 has no application where, as here, the power of sale is conferred in a deed of trust. " '[S]ection 2932.5 is inapplicable to deeds of trust. [Citation.] 'Section 2932.5 requires the recorded assignment of a mortgage so that a prospective purchaser knows that the mortgagee has the authority to exercise the power of sale. This is not necessary when a deed of trust is involved, as the trustee conducts the sale and transfers title.' [Citation.] In other words, 'because a deed of trust does not convey a power of sale directly to the beneficiary-creditor, it is immaterial whether an assignment of a promissory note was properly acknowledged and recorded when a deed of trust is used to secure a debt.' [Citation.]" (*Orcilla v. Big Sur* (2016) 244 Cal.App.4th 982, 1003.)

Because all of plaintiff's theories of wrongful foreclosure fail as a matter of law, and we see no reasonable possibility plaintiff could amend her complaint to state a viable wrongful foreclosure claim, we conclude the trial court did not err in sustaining the demurrer without leave to amend as to causes of action 2 (cancellation of voidable contract), 5 (set aside trustee's sale), 6 (cancel trustee's deed upon sale) and 7 (wrongful foreclosure).

### E. Fraud

Plaintiff's complaint includes a fraud claim against ASC. The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) "[F]raud must be pled specifically; general and conclusory allegations do not suffice." (*Id.* at p. 645.) "The particularity requirement ' "necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.' " ' " (*Hamilton v. Greenwich Investors XXVI, LLC, supra,* 195 Cal.App.4th at p. 1614.)

Plaintiff alleges "ASC mislead [*sic*] her to believe they were 'really' reviewing her request for a loan modification days before the [foreclosure] sale. Their intent at all times was to foreclose on the property." Further, plaintiff alleges she "reasonably relied

16

on Defendant ASC's promise to evaluate her information for a loan modification. She thought they would be fair." As a result, plaintiff claims, she "did not seek alternative financial or legal remedies to rescue the property . . . ."[3]

These conclusory allegations are plainly insufficient to state a claim for fraud. In a case against a corporation, a plaintiff asserting a fraud claim must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. (See *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 764.) Plaintiff's complaint does not include any allegations to that effect. Further, the complaint does not reveal how plaintiff was deceived. She does not allege, for example, that anyone at ASC promised to modify her loan before the foreclosure sale but then denied her request after the sale. Nor does plaintiff allege anyone at ASC told her the sale would be delayed pending their decision on her loan modification request.

The next question is whether the trial court abused its discretion in sustaining the demurrer to the fraud cause of action without leave to amend. Plaintiff did not explain below, or in her opening brief, how she could amend her fraud claim to state a valid claim. Further, based upon the allegations in the complaint, we see no reasonable possibility plaintiff could state a viable fraud claim in this case.

A plaintiff establishes reliance in a fraud case "when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction. [Citations.]" (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 (*Alliance*); see also CACI No. 1907 (2016 ed.) [reliance shown if misrepresentation, concealment or false promise "substantially influenced" plaintiff and

---

[3] The bulk of the fraud allegations relate to the actions of plaintiff's mortgage loan originator, BNC Mortgage. Because BNC is not a party to this appeal, we do not concern ourselves with those aspects of the fraud claim.

17

he or she "would probably not have" acted absent it].)  Here, plaintiff seems to allege she did not pursue other legal remedies to save her home from foreclosure because she was waiting for ASC's decision on her loan modification request.  She alleges, for example, "[h]ad [p]laintiff known the true facts, she would have taken 'legal' action immediately to save her home.  Defendant, ASC led [p]laintiff on regarding a possible loan modification just days before the sale."  Though it is unclear from the complaint what "true facts" were unknown to plaintiff, all the allegations indicate she actually relied on some statement by ASC indicating it would review her final request for a loan modification.

But it is not enough to allege actual reliance.  A plaintiff must also allege, and ultimately prove, *justifiable* reliance, " ' "i.e., circumstances were such to make it *reasonable* for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation."  [Citation.]  The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience. [Citation.]' " (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 794.) Although the question of whether reliance is reasonable is generally one of fact, the issue " 'may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.' " (*Alliance, supra,* 10 Cal.4th at p. 1239.)  Such is the case here.

Plaintiff alleges she did not take steps to avoid foreclosure in the days before the scheduled foreclosure sale because she was waiting for an answer from ASC in response to her loan modification request.  Evidently, plaintiff expected ASC would offer her a loan modification and suspend foreclosure proceedings—otherwise, she would have had no reason to suspend her efforts to avoid foreclosure.  However, in light of the other allegations of the complaint, it is apparent plaintiff had no reasonable basis to believe ASC would approve her request.  Specifically, plaintiff alleges ASC rejected at least ten prior loan modification requests.  In the absence of some material change in circumstance (which plaintiff has not alleged), plaintiff could not reasonably have believed ASC would approve her final application for a loan modification after it had

18

rejected ten prior, similar requests.  In short, the allegations of the complaint demonstrate plaintiff's claim of reasonable reliance fails as a matter of law.

Accordingly, the trial court did not err in sustaining the demurrer without leave to amend as to the fraud claim.

### F.    Negligence

Plaintiff's third cause of action is a negligence claim against ASC.  "To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries.  [Citation.]  Whether a duty of care exists is a question of law to be determined on a case-by-case basis.  [Citation.]  [¶]  We start by identifying the allegedly negligent conduct by [defendants] because our analysis is limited to 'the specific action the plaintiff claims the particular [defendant] had a duty to undertake in the particular case.' "  (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 62 (*Lueras*); see also *Alvarez v. BAC Home Loans Servicing, L.P.* (2014) 228 Cal.App.4th 941, 944 (*Alvarez*).)

Plaintiff alleges ASC "had the duty to try and modify loans."  In the same vein, plaintiff alleges "ASC was negligent because they refused to modify a predatory loan which the Plaintiff never qualified."  [*sic*]  As currently drafted, plaintiff's complaint fails to allege a valid negligence claim because, as a matter of law, ASC did not have a duty to modify plaintiff's loan:  "Lenders and borrowers operate at arm's length. [Citations.]  '[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'  [Citation.]"  (*Lueras, supra*, 221 Cal.App.4th at p. 63.)  More particularly, and as relevant here, "a lender does not owe a borrower a common law duty 'to offer, consider or approve' a loan modification."  (*Alvarez, supra,* 228 Cal.App.4th at p. 946.)

However, based upon our review of the complaint and the opening brief, we conclude there is a reasonable possibility plaintiff could amend her complaint to state a valid negligence claim.  Notwithstanding the general rule that a lender does not have

19

a duty to offer or approve a loan modification, some courts have held a lender owes a borrower a duty to use reasonable care in negotiating or processing a loan modification agreement. (See, e.g., *Alvarez, supra,* 228 Cal.App.4th at pp. 947-949, and cited cases.) Thus, a plaintiff may state a claim for negligence by alleging the lender or, as here, the loan servicer as the agent of the lender, failed to timely process the loan modification application, resulting in damage to the plaintiff. (*Id.* at p. 948 [agreeing that where "defendants allegedly agreed to consider modification of the plaintiffs' loans . . . it was entirely foreseeable that failing to timely and carefully process the loan modification applications could result in significant harm to applicants"].) Here, plaintiff's complaint generally alleges ASC failed to process her loan modification request in a timely manner and plaintiff was prejudiced by the untimely response because she failed to pursue other means to avoid foreclosure. Although for the reasons we stated with regarding to the fraud claim, we have some doubt plaintiff will be able to prove an untimely response from ASC caused her to suffer any damage, that is not the question before us at the pleading stage. It seems reasonably probably that plaintiff may be able to amend her complaint to state a viable claim of negligence and she should have at least one opportunity to do so.

Accordingly, we conclude the court abused its discretion by sustaining ASC's demurrer to the negligence cause of action without leave to amend.

### G. Plaintiff's Remaining Causes of Action

Plaintiff failed to challenge the court's ruling with respect to causes of action 4 (unfair competition), 8 (implied covenant of good faith and fair dealing), 9 (quiet title) and 10 (injunctive relief). She has therefore waived any error as to those claims. (See *Title G. & T. Co. v. Fraternal Finance Co.* (1934) 220 Cal. 362, 363 ["Appellate courts will notice only those assignments pointed out in the brief of an appellant, all others are deemed to have been waived or abandoned"].)

### H. Due Process

In her opening brief, plaintiff contends the court violated the due process clause contained in the 14th amendment to the United States Constitution. Though stated

20

inartfully, the thrust of plaintiff's argument appears to be that the court erroneously denied her the opportunity to amend her complaint and we construe it as such. As explained *ante*, we agree plaintiff is entitled to the opportunity to amend her cause of action for negligence against ASC. (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747 ["If the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment"].)

Plaintiff makes some generalized assertions that the proceeding below was unfair and the judge was not impartial, from which she concludes she was denied due process of law. We disregard those arguments because they are unsupported by citations to the record or relevant legal authority and argument. (See, e.g., Cal. Rules of Court, rule 8.204(a); *Pringle v. La Chapelle* (1999) 73 Cal.App.4th 1000, 1003-1004, fn. 2, [appellant must provide sufficient citations to record; contentions waived when there is a lack of reasoned argument and citation to authority]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; *Kunec v. Brea Redevelopment Agency* (1997) 55 Cal.App.4th 511, 526, fn. 9 [passing reference to subject does not constitute legal argument].)

**DISPOSITION**

The judgment in favor of ASC is reversed in part. On remand, plaintiff should be allowed the opportunity correct the standing issue by either substituting the bankruptcy trustee as the plaintiff or securing the trustee's abandonment of her pending litigation claims. Plaintiff should then be allowed at least one opportunity to amend her complaint with respect to the negligence claim against ASC. In all other respects, the judgment in favor of ASC, as well as the judgments in favor of MERS and Lian Feng, are affirmed. Respondent Lian Feng is entitled to costs on appeal. No costs are awarded to ASC and MERS.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

ALDRICH, Acting P. J.

HOGUE, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22